IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TRACY DUNLAP,** | Case No. 3:12-cv-01635-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **LIBERTY NATURAL PRODUCTS, INC.,** | |
| Defendant. | |

Kerry M. L. Smith, Smith & Fjelstad, 722 N. Main Avenue, Gresham, OR 97030. Attorney for Plaintiff.

Jean Ohman Back and Leora Coleman-Fire, Schwabe, Williamson & Wyatt, P.C., Pacwest Center, 1211 S.W. 5th Avenue, Suite 1900, Portland, OR 97204. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Tracy Dunlap ("Dunlap") brings this suit against her former employer Defendant

Liberty Natural Products ("Liberty") alleging discrimination based on disability under the

Americans with Disabilities Act and Or. Rev. Stat. § 659A.122 (collectively "ADA"),

discrimination for using the Oregon workers' compensation system under Or. Rev. Stat.

§ 659A.040, failure to reinstate or reemploy under Or. Rev. Stat. §§ 659A.043 and 659A.046,

and discrimination for filing claims with the Oregon Bureau of Labor and Industries ("BOLI")

PAGE 1 – OPINION AND ORDER

and the Equal Employment Opportunity Commission ("EEOC") under Or. Rev. Stat.

§ 659A.199. On July 26, 2013, Liberty filed a Motion for Summary Judgment against all of

Dunlap's claims. Dkt. 21. For the reasons that follow, the Court grants in part and denies in part

Liberty's Motion for Summary Judgment.

## BACKGROUND

Liberty is a small business that grows, imports, and wholesale distributes botanical

ingredients and natural products. Dunlap began working for Liberty in 2006 as a shipping clerk.

Although the parties disagree about what are the essential functions of the shipping clerk

position, they agree that before Dunlap's injury in 2010, her primary tasks included: (1) auditing

items to be shipped ("auditing process"); (2) wrapping and boxing the items to be shipped

("boxing process"); and (3) weighing the box and preparing the invoice for shipping ("shipping

process"). The auditing process included regular lifting of products that weighed less than one

pound, regular lifting of items that weighed eight to ten pounds, and occasional lifting of items

that weighed 30 to 55 pounds. The boxing process included repetitive tape gun usage while

constructing boxes, occasional lifting of up to 30 pounds, regular pushing of up to 35 pounds,

and occasional pushing of 50 pounds or more. The shipping process included lifting and stacking

boxes, most of which weighed two to 35 pounds, but some of which weighed between 35 and 50

pounds.

In July 2010, Dunlap notified Liberty that her left elbow was injured from repetitive

trauma while working at Liberty. Liberty promptly made adjustments to Dunlap's work station

and chair. In October 2010, when Dunlap's elbow pain persisted, she initiated a workers'

compensation claim. Dunlap met with Liberty's general manager and safety representative to

discuss the injury. Dunlap could no longer complete the auditing, boxing, or shipping processes

for large or heavy orders. Additionally, she could not construct or tape boxes with the tape gun.

PAGE 2 – OPINION AND ORDER

On December 17, 2010, Dunlap received a Notice of Acceptance regarding her workers' compensation claim, informing her that she would lose her rights to reinstatement if she was determined to be not physically able to return to her job or if she failed to request reinstatement within seven days of receiving a notice from the insurer that she had been released to work.

Liberty believed that Dunlap's injury was temporary and, therefore, arranged a temporary accommodation for Dunlap by having other staff members assemble and tape boxes for Dunlap and assist her with heavy orders. Dunlap alleges that this accommodation was working well and that she did not know it was only temporary. Liberty alleges, however, that these temporary accommodations became onerous to maintain because other employees had to perform all of their own duties in addition to significant aspects of Dunlap's duties. As an alternative light duty accommodation, Liberty asked Dunlap to work in the customer service department. Within two weeks, Dunlap asked to be moved back to the shipping department. Liberty asserts that Dunlap did not perform adequately in the customer service department because she was avoiding contact with customers.

In October 2011, other shipping department employees complained to Liberty regarding the physical toll caused by performing Dunlap's heavier job duties in addition to their own. Liberty made a second attempt to move Dunlap to the customer service department. Liberty states that Dunlap again performed poorly in this department, avoiding phone calls and other interactions with customers. Because of this, Liberty decided that the customer service position was not a suitable long-term role for Dunlap.

On January 6, 2012, Dunlap participated in a physical capacity evaluation ("PCE").[1] The PCE findings restricted Dunlap from lifting and carrying heavy objects. The PCE did not identify any other physical restrictions. Liberty alleges that it never received a copy of the PCE report and was not informed of the findings from the evaluation.

On March 8, 2012, Liberty's workers' compensation insurer sent a Notice of Closure[2] to Dunlap regarding her elbow injury. The Notice of Closure stated that Dunlap's attending physician had found that Dunlap was not released to regular work but only to modified or restricted duty. Because of this, Dunlap was entitled to permanent partial disability. At this time, Liberty did not have a modified or restricted duty position available, and the shipping clerk position required a full release. On March 22, 2012, Dunlap's workers' compensation claim representative confirmed to Dunlap that her light duty restriction was permanent.

On April 27, 2012, Dunlap presented Liberty with her Preferred Worker Card.[3] Later that day, Liberty terminated Dunlap. Liberty states that the decision to terminate Dunlap was made on April 26, 2012, before receiving her Preferred Worker Card, and that Dunlap's manager signed and dated Dunlap's letter of termination on April 26, 2012. On May 4, 2012, Dunlap requested reinstatement or reemployment, arguing that she was "medically stationary." Dunlap did not suggest or request any accommodations for the shipping clerk position. Liberty

---

[1] A PCE is a medical examination of an injured worker by a physician other than the worker's attending physician that is performed at the request of the insurer. A PCE measures a worker's ability to perform a variety of physical tasks. OREGON WORKERS' COMPENSATION TERMS & ABBREVIATIONS, www.cbs.state.or.us/wcd/communications/publications/terms.html.

[2] A Notice of Closure is a form sent by an insurer to the worker that officially closes the workers' compensation claim and states the extent of any permanent disability. *Id.*

[3] A Preferred Worker Card is a card given to members of a special workers' compensation program that provides benefits to employers who employ permanently disabled workers. *Id.*

PAGE 4 – OPINION AND ORDER

responded to Dunlap's letter on May 5, 2012, explaining that Liberty could not reinstate Dunlap into the shipping clerk position unless a physician released her to regular work. Liberty invited Dunlap to provide medical certification demonstrating such a release, or to identify any available positions at Liberty for which Dunlap believed she would be suitable. Dunlap did not respond.

On May 14, 2012, Dunlap filed a complaint with BOLI and EEOC complaining of disability discrimination and other violations of Oregon laws. After an investigation, BOLI issued a letter of dismissal on June 26, 2012, for lack of sufficient evidence.

In the summer and fall of 2012, Dunlap applied to a variety of jobs at Liberty in response to several job postings on Craigslist, a classified advertisement website. In August of 2012, Dunlap applied for a customer service job, production assistant job, and shipping clerk job. Liberty alleges it did not consider Dunlap for any of these positions because of her physical restrictions and because of her inadequate performance in the customer service position. Dunlap filed this lawsuit against Liberty on September 11, 2012.

In November of 2012, Dunlap applied for two new job openings posted by Liberty on Craigslist—a shipping clerk job and a customer service job. Liberty continued to maintain that Dunlap was not qualified for these two positions, but Liberty had been considering adding a new position, a Multi Department Assistant Flex Position ("Multi Flex"), and Liberty offered to interview Dunlap for this new position. Dunlap failed to show up for the scheduled interview; nonetheless, Liberty offered Dunlap the Multi Flex position on November 16, 2012. Dunlap rejected Liberty's offer of employment.

On December 13, 2012, Liberty made a second offer to reinstate Dunlap. This time, Liberty offered Dunlap either the Multi Flex position or a shipping clerk position; however the shipping clerk position offer was incumbent on Dunlap providing present medical information to

show that she had been released to regular employment by her physician. Dunlap again rejected the offers of employment. At this point, Dunlap's counsel provided Liberty with a note from Dunlap's physician explaining that despite the fact that Dunlap was taking "two mental health drugs," her anxiety prevented her from attending the November interview and accepting any job at Liberty.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient. . . . " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

## DISCUSSION

### A.  Disability Discrimination (ADA and Or. Rev. Stat. § 659A.122)

Dunlap claims that Liberty violated the ADA and related Oregon disability law by failing to participate in an interactive process, failing to accommodate Dunlap's disability, and refusing to interview and hire Dunlap because of her disability. Liberty moves for summary judgment on

Dunlap's disability discrimination claims, arguing primarily that: (1) Dunlap was not a qualified individual under the ADA; and (2) Liberty did engage in the interactive process. For the following reasons, Liberty's motion for summary judgment on Dunlap's disability discrimination claims is denied.

### 1. Qualified Individual

Liberty's primary argument is that Dunlap failed to establish her prima facie case under the ADA that she is a qualified individual with a disability. A qualified individual is a disabled employee who is otherwise qualified and capable of performing the essential functions of the position with or without accommodation. 42 U.S.C. § 12111(8). Liberty does not argue that Dunlap is not disabled or that she is not otherwise qualified to be a shipping clerk. Rather, Liberty argues that Dunlap cannot perform the essential functions of the shipping clerk position with or without reasonable accommodation. Dunlap responds that there are genuine issues of material fact as to what are the essential functions of the shipping clerk position and whether Dunlap could have performed those essential functions with accommodation.

### a. Standards

To bring a claim under the ADA, an employee must be a qualified individual. *Samper v. Providence St. Vincent Medical Center*, 675 F.3d 1233, 1237 (9th Cir. 2012). Although the employee bears the burden of demonstrating that he or she is a qualified individual and can perform the essential functions of the job, the employer bears "the burden of production in establishing what job functions are essential as much of the information which determines those essential functions lies uniquely with the employer." *Id.* (citation and quotation marks omitted). To be a qualified individual, a disabled person must be able to perform the "essential functions" of his or her job, "with or without accommodation." 42 U.S.C. § 12111(8). A job's essential functions are the "fundamental job duties of the employment position the individual with the

PAGE 7 – OPINION AND ORDER

disability holds or desires." 29 C.F.R. § 1630.2(n)(2). A job duty may be an essential function because the performance of that duty is the reason the position exists or because only a limited number of employees are available to perform that duty. *Id.* "Consideration shall be given to the employer's judgment as to what functions of the job are essential." 42 U.S.C. § 12111(8). Additionally, the "work experience of past incumbents in the job" and "the consequences of not requiring the incumbent to perform the function" are considered when determining the essential functions of a position. 29 C.F.R. § 1630.2(n).

### b. There is a genuine dispute of material fact as to the essential functions of the shipping clerk position

Liberty argues that the essential functions of the shipping clerk position are established beyond genuine factual dispute and that they include lifting and carrying heavy objects. Dunlap responds that Liberty conflates essential functions with the manner in which those functions have historically been performed. Specifically, Dunlap argues that lifting and carrying heavy objects is not an essential function but merely the historical method of performing the actual essential function of moving boxes of Liberty's product from point A to point B.

Liberty argues that Dunlap's deposition testimony establishes that lifting and carrying heavy objects is among the shipping clerk's essential functions. In Dunlap's deposition, Liberty asked her whether she believed that lifting was an "essential part" of her job as a shipping clerk. Dunlap answered that it was. "Essential functions," as it is used in the ADA, is a legal term of art. Dunlap explained in her declaration, and Liberty does not dispute, that she was not instructed on the legal meaning of that phrase and could not reasonably be expected to have understood the potential legal implications of her admissions. S*ee Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1170 (9th Cir. 2008); *In re Coast Trading Co., Inc.*, 62 B.R. 664, 667 (Bankr. D. Or. 1986). It is possible, for example, that she meant that lifting and carrying heavy objects was one

of her primary tasks before her injury. Accordingly, Dunlap's admission is not sufficient to foreclose dispute over whether lifting and carrying heavy objects was in fact an essential function of her position.

Liberty also argues that lifting and carrying heavy objects are essential functions of the shipping clerk position based on the judgment of the employer, the historical methods used in the shipping clerk position, and because without lifting and carrying heavy objects the "consequence" would be that Liberty's inventory would not ship. Although an employer's judgment, historical methods employed for a position, and the claimed consequences of not requiring a worker to perform functions are all evidence of that position's essential functions, they do not irrefutably establish the essential functions. *See* 29 C.F.R. § 1630.2(n).

Moreover, Dunlap argues that Liberty has improperly conflated historical practice with essential functions. *See* 29 C.F.R. Pt. 1630, App., § 1630(9). The appendix to 29 C.F.R. § 1630 provides a useful example to illustrate the difference between historical practice and essential functions. *See id.* In the example, a disabled Sack Handler can no longer lift heavy sacks. The essential function of the Sack Handler position is not lifting the sacks, but rather, causing the sacks to move from point A to point B. *Id.* Lifting is merely historical practice. *Id.* Dunlap argues that her case is analogous to the Sack Handler example, and she argues that the actual essential function of the shipping clerk position is to ensure that the product is properly and timely shipped. Because a reasonable factfinder could conclude that the shipping clerk position's essential functions include moving boxes from point A to point B rather than lifting and carrying heavy objects, summary judgment is not appropriate on the basis that the essential functions preclude Dunlap from being a qualified individual.

### c. There is a genuine dispute of material fact as to whether Dunlap could perform the essential functions of the shipping clerk position with reasonable accommodation

Dunlap does not dispute that she could not move boxes from point A to point B without an accommodation. To the extent that a plaintiff cannot perform an essential function without accommodation, she must present evidence of a reasonable accommodation that would enable her to do so. *See Humphrey v. Mem'l Hospital Ass'n*, 239 F.3d 1128 (9th Cir. 2001). Assistive devices that enable a disabled employee to perform physical functions are one form of potentially reasonable accommodation. 29 C.F.R. § 1630.2(o). At summary judgment, a plaintiff need not prove that a proposed accommodation "is certain or even likely to be successful to prove that it is . . . reasonable." *Humphrey* 239 F.3d at 1136. Rather, the plaintiff need only present evidence of an accommodation that is facially reasonable, and that a reasonable factfinder could conclude would enable her to perform the essential functions of the job. *Id.*

As noted above, on January 6, 2012, Dunlap participated in the PCE. The PCE findings restricted Dunlap from lifting and carrying heavy objects, but did not identify any other physical restrictions. Dunlap's treating physician subsequently concurred with the PCE findings. Based on this evidence, a reasonable factfinder could conclude that Dunlap was capable of performing all of the physical requirements of her job (*e.g.*, pushing, pulling, and using a taping gun), other than lifting and carrying heavy objects, without accommodation. Therefore, to avoid summary judgment, Dunlap need only suggest a facially reasonable accommodation that would enable her to move boxes from point A to point B without lifting or carrying heavy objects.

In a declaration attached to Dunlap's response to Liberty's motion for summary judgment, Dunlap alleges that she has reviewed numerous pneumatic assistive devices and that she believes that those devices would enable her to move boxes from point A to point B without violating her physical restrictions. The pneumatic devices identified by Dunlap are facially

PAGE 10 – OPINION AND ORDER

reasonable accommodation. *See* 29 C.F.R. Pt. 1630, App., § 1630.2(o). Whether those devices would actually enable Dunlap to perform the essential functions of her position is a genuine question of material fact to be decided by a jury. Thus, Dunlap has presented sufficient evidence to survive summary judgment on the issue of whether she is a qualified individual.

### 2.  Interactive Process

Liberty argues that even if Dunlap is a qualified individual, Dunlap's claim that Liberty failed to engage in the interactive process fails as a matter of law. Specifically, Liberty argues that it engaged in the interactive process in good faith and that any breakdown in the interactive process was attributable to Dunlap's own failure to suggest alternative accommodations, notify Liberty of Dunlap's revised physical restrictions following the PCE and respond to Liberty's offers to discuss other accommodations or available positions. Because a reasonable factfinder could conclude that Liberty did not engage in the interactive process in good faith, summary judgment is not appropriate.

### a.  Standards

"[O]nce an employee requests an accommodation . . . the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002). "[E]mployers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *vacated on other grounds*, 535 U.S. 391 (2002). "A party that fails to communicate, by way of initiation or response, may . . . be acting in bad faith." *Beck v. Univ. of Wisconsin Board of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). Good faith participation in the interactive process is a continuing obligation, and the failure of an attempted accommodation does not excuse an employer from further participation in the interactive

process. *Humphrey*, 239 F.3d at 1138. Rather, "the employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation." *Id.* Generally, a disabled employee has the burden of proposing a reasonable accommodation. *See id.* When "the employer is aware that the initial accommodation is failing and further accommodation is needed," however, an employee's failure to propose an alternative accommodation does not necessarily foreclose a claim that the employer failed to engage in the interactive process. *Id.*

              **b.  There is a genuine dispute of material fact as to whether Liberty failed to engage in the interactive process**

Dunlap alleges that after receipt of the Notice of Closure, Liberty did not inform Dunlap that it no longer considered the prior accommodations reasonable or that it was contemplating termination. Dunlap further alleges that Liberty did not discuss the possibility or necessity of alternative accommodations. Because of this, Dunlap claims Liberty impermissibly failed to engage in the interactive process after it became aware that Dunlap's partial disability would be permanent. Liberty argues that it engaged in the interactive process in good faith and attempted to provide Dunlap with multiple accommodations, including assistance with heavy orders and reassignment to the customer service department. Liberty also argues, in the alternative, that Dunlap absolved Liberty of its obligations to engage in the interactive process, by (1) failing to notify Liberty of the PCE results, and (2) failing to propose alternative accommodations after receipt of the Notice of Closure.

Liberty cites *Allen v. Pacific Bell*, 348 F.3d 1113 (9th Cir. 2003), for the proposition that failure to provide updated medical information can excuse an employer's failure to participate in the interactive process. The facts of *Allen* are distinguishable from the case at bar. In *Allen*, the plaintiff had been removed from his previous position and placed at a desk job pursuant to a medical evaluation that determined he was only qualified to perform sedentary work. *Id.* When

the plaintiff petitioned for reinstatement to his previous position, the employer refused to consider accommodations until the plaintiff submitted evidence of an updated medical status releasing him to perform more strenuous work. *Id.* The *Allen* court held that because the employee failed to provide updated medical information at the employer's request, the employer was not required to continue participating in the interactive process. *Id.*

Unlike *Allen*, in this case it was not conclusively determined that Dunlap was physically incapable of performing her job's essential functions with accommodation. Therefore, her failure to provide Liberty with the PCE is not dispositive. Indeed, Dunlap testified in her declaration that she believed she was adequately performing the functions of her job. A reasonable factfinder could conclude that Dunlap's failure to notify Liberty of her improved physical abilities was due to her reasonable belief that the accommodations Liberty already provided were mutually acceptable. Therefore, Dunlap's failure to notify Liberty of the PCE results does not foreclose her claim that Liberty failed to participate in the interactive process in good faith.

Liberty's second argument, that Dunlap did not participate in the interactive process because she did not suggest specific accommodations during her employment, is also unavailing. Although the burden of proposing an accommodation is generally on the disabled employee, both the employee and the employer must make efforts to determine a reasonable accommodation. 29 C.F.R. Pt. 1630, App. at 383. When one party has information that puts it in a position to recommend a potentially viable accommodation, that party has a responsibility to propose such an accommodation. *Id.* at 384.

During the pendency of Dunlap's workers' compensation claim, and for a time thereafter, Liberty provided Dunlap with accommodations including the delegation of certain job functions to other employees. The Notice of Closure informed Liberty that Dunlap was permanently

PAGE 13 – OPINION AND ORDER

disabled and that she would not be able to resume lifting and carrying heavy objects. Sometime

after this change in Dunlap's status, Liberty decided to discontinue the accommodations it had

previously provided. Dunlap testified that she was unaware that the existing accommodations

were not permanent, and thus, did not know that she needed to propose a new accommodation.

Dunlap, therefore, would have perceived no reason to engage Liberty in the interactive process.

A reasonable factfinder could conclude that Liberty was at this point in a superior position to

propose an alternative accommodation, or at the very least, that Liberty acted in bad faith by not

communicating to Dunlap that her prior accommodations would be revoked and by denying

Dunlap the opportunity to propose an alternative accommodation.

Dunlap has provided sufficient evidence so that a reasonable factfinder could conclude

that Liberty terminated her without properly engaging in the interactive process. Therefore,

summary judgment is not appropriate on Dunlap's claims that Liberty failed to engage in the

interactive process.

## B.  Workers' Compensation Discrimination

Dunlap alleges three violations of Oregon workers' compensation laws: (1) Liberty

retaliated against Dunlap by terminating her because of her participation in the workers'

compensation system; (2) Liberty failed to reinstate Dunlap; and (3) Liberty failed to reemploy

Dunlap. For the reasons discussed below, genuine issues of material fact remain as to the second

and third claims, but not to the first.

### 1.  Retaliation

To make a prima facie showing of termination based on using Oregon's workers'

compensation laws, Dunlap must show (1) invocation or use of the workers' compensation

system; (2) an adverse employment action; and (3) a causal link between the two. Or. Rev. Stat.

§ 659A.040. The parties do not dispute that the first two elements of Or. Rev. Stat. § 659A.040

PAGE 14 – OPINION AND ORDER

are satisfied. To establish a causal link, as required by the third element, Dunlap must show that

her protected participation in the workers' compensation system was a factor that made a

difference in Liberty's conduct. The degree of proof necessary to establish a prima facie case of

a causal link on summary judgment is "minimal" and a plaintiff need only prove an inference of

discrimination. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1089-91 (9th Cir. 2001).

Thus, a causal connection can be established either "(1) indirectly, by showing that the protected

activity was followed closely by discriminatory treatment . . . , or (2) directly, through evidence

of retaliatory animus directed against a plaintiff by the defendant." *Boynton-Burns v. Univ. of

Or.*, 105 P.3d 893, 897 (Or. App. 2005).

This Court applies the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden

shifting framework to claims brought under Or. Rev. Stat. § 659A. *See Snead*, 237 F.3d at 1090-

94 (9th Cir. 2001) (holding that even though Oregon courts do not follow the burden-shifting

approach, the Oregon rule is not outcome-determinative, so the burden-shifting framework is

appropriate in the Ninth Circuit). The *McDonnell Douglas* burden shifting framework provides

that after a plaintiff proves a prima facie case of retaliation, the employer must present evidence

of a legitimate, non-retaliatory reason for the adverse action. *Id.* If the employer successfully

carries this burden, then the plaintiff must show that the non-retaliatory reason given by the

employer was merely pretext for discrimination. *Id.*

### a.  The temporal proximity between Dunlap's protected activity and her termination create a prima facie inference of causation

Dunlap argues that the temporal proximity between Dunlap's protected activity (applying

for benefits, receiving the Notice of Closure, and presenting the Preferred Worker Card to

Liberty) and Liberty's termination of Dunlap supports an inference of causation.[4] Whether an adverse employment action is intended to be retaliatory is a "question of fact that must be decided in the light of surrounding circumstances." *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003). Time periods of up to a year have been held to support a finding of causation at summary judgment. *See id.* ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation."); *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002) (11 months); *Dalton v. Wash. State Dep't. of Corr.*, 344 Fed. App'x 300, 303 (9th Cir. 2009) (one year). Courts are cautioned, however, not to "engage in a mechanical inquiry into the amount of time" between protected conduct and an adverse action. *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 751 (9th Cir. 2010). "A rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic." *Coszalter*, 320 F.3d at 977-78. *Coszalter* "did not repudiate *Allen*'s holding that proximity in time may constitute circumstantial evidence of retaliatory motive." *Anthoine*, 605 F.3d at 751.

"For a variety of reasons, some retaliators prefer to take their time: They may wait until the victim is especially vulnerable or until an especially hurtful action becomes possible. Or they may wait until they think the lapse of time disguises their true motivation." *Coszalter*, 320 F.3d at 978. Courts should be "particularly sensitive" to this last point, for if a specified time period is deemed *per se* too long to support an inference of retaliation, "well-advised retaliators will simply wait until that period has passed." *Id*. Retaliators may also wait until a circumstance arises that they think will disguise their true motivation and provide a legitimate non-retaliatory reason for an adverse employment action.

---

[4] Dunlap also argues that there is direct evidence of causation, but this argument is unpersuasive as there is no direct evidence in the record of animus.

PAGE 16 – OPINION AND ORDER

Here, Dunlap's termination occurred 18 months after Dunlap applied for workers' compensation benefits, 51 days after Liberty's insurer issued Dunlap's Notice of Closure on her workers' compensation claim, and on the same day that Dunlap presented her Preferred Worker Card to Liberty. The time periods between Dunlap's Notice of Closure and her termination and between Dunlap's presentation of her Preferred Worker Card and her termination are well within the range that has been found to support an inference of causation. *See Coszalter*, 320 F.3d at 978. Based on the proximity of Dunlap's protected activity and her termination, considering the other the evidence in the record and viewing the evidence in the light most favorable to Dunlap, Dunlap has shown a prima facie case of retaliation.[5]

### b.  Liberty's assertion of a legitimate non-retaliatory reason for its conduct

After a plaintiff proves a prima facie case of retaliation, the employer must present evidence of a legitimate, non-retaliatory reason for the adverse action. *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 425 (9th Cir. 2013) (Rawlinson, J., concurring in part and dissenting in part). The defendant need not prove the absence of retaliatory intent or motive; it simply must produce evidence sufficient to "dispel the inference of retaliation raised by the plaintiff." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). Liberty asserts that its decision to terminate Dunlap was because she was permanently partially disabled and could no longer perform the essential functions of her position with reasonable accommodation. This is a legitimate non-retaliatory reason for Liberty's conduct.

---

[5] Liberty alleges that it decided to terminate Dunlap the day before she presented her Preferred Worker Card to Liberty. Dunlap alleges that the decision to terminate was made on the same day that she presented her Preferred Worker Card. This is an issue of fact to be decided by the factfinder.

### c.  Dunlap has not met her burden of presenting evidence that Liberty's asserted legitimate reason for its conduct was pretextual

Dunlap can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Sanders v. City of Newport*, 657 F.3d 772, 777, n.3 (9th Cir, 2011) (quoting *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002)) (quotation marks omitted). A plaintiff can rely on circumstantial evidence to show pretext, but such evidence must be both specific and substantial. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

In assessing whether the employer's proffered reasons for the action are pretextual, "it is not important whether they [are] *objectively* false." *Id.* at 1063 (emphasis in original). "Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Id*. (citation and quotation marks omitted).

A plaintiff does not have to introduce additional, independent evidence at the pretext stage. *Chuang v. Univ. of Cal. Davis Bd. Of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000). Rather, a plaintiff can "survive summary judgment without producing any evidence of discrimination beyond that constituting his [or her] prima facie case, if that evidence raises a genuine dispute of material fact regarding the truth of the employer's proffered reasons." *Id*.

Dunlap has provided no direct evidence that Liberty's non-retaliatory reason for terminating Dunlap was pretextual. And although indirect evidence is sometimes sufficient to survive summary judgment, the evidence must be "specific and substantial." Dunlap essentially relies on the inference of discrimination created by the temporal proximity of Dunlap's protected activity and the termination. Dunlap does not address, however, why the *closure* of Dunlap's workers' compensation claim (as represented through the Notice of Closure) would be something

that would influence Liberty to retaliate against Dunlap. Moreover, Dunlap does not address why Dunlap's participation in the Preferred Worker Program, a program that provides benefits to employers, would influence Liberty to retaliate against Dunlap. Therefore, the circumstantial evidence presented by Dunlap is not specific and substantial and does not raise a genuine dispute of material fact regarding the truth of Liberty's proffered reason for termination. As such, Dunlap has not met her burden at the third phase of the *McDonnell Douglas* burden shifting framework, and Liberty's motion for summary judgment on Dunlap's retaliation claim is granted.

### 2.   Failure to Reinstate an Injured Worker (Or. Rev. Stat. § 659A.043)

Dunlap alleges that Liberty violated Or. Rev. Stat. § 659A.043 by failing to reinstate Dunlap after she made a demand. Or. Rev. Stat. § 659A.043 states that "a worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such a position." Or. Rev. Stat. § 659A.043(1). An injured worker makes a demand by "informing the employer that the worker seeks reinstatement or reemployment." Or. Admin. R. 839-006-0105(4). The demand must either comply with the employer's written policy, if one exists, or must be made orally or in writing. Or. Admin. R. 839-006-0130(5).

The right to reinstatement does not apply if the worker is disabled from performing the duties of the former position. Or. Admin. R. 839-006-0130(1)(c). Moreover, the right to reinstatement terminates under several circumstances, including (1) when "a medical determination by the attending physician . . . has been made that the worker cannot return to the former position of employment;" and (2) when "seven days elapse from the date that the worker is notified by the insurer or self-insured employer by certified mail that the worker's attending

physician . . . has released the worker for employment unless the worker requests reinstatement within that time period." Or. Rev. Stat. § 659A.043(3). "Extenuating circumstances may, in very rare instances, extend the time allowed for timely demand for reinstatement." Or. Admin. R. 839-006-0130(6). Additionally, a demand is not required if the employer has made it known to the worker that the employer would not consider reinstating the worker, so a demand would be futile. Or. Admin. R. 839-006-1030(7).

Liberty argues that the right to reinstatement does not apply to Dunlap because she is disabled from performing the duties of the position. For the reasons discussed above, however, regarding the essential functions of the shipping clerk position, there is a genuine dispute of fact as to whether Dunlap was disabled from performing the job. Therefore, Liberty's argument is not grounds for granting summary judgment on the reinstatement claim.

Liberty also argues that Dunlap's right to reinstatement terminated because she failed to make a demand of reinstatement within seven days of receiving the Notice of Closure by certified mail. Dunlap received the Notice of Closure on March 8, 2012, and did not make a demand of reinstatement until May 4, 2012. Dunlap argues that she made a demand of reinstatement by showing up to work every day after receiving the Notice of Closure. This argument fails because Oregon Administrative Rules require that the demand be either in compliance with the employer's written policy, or be oral or in writing.[6] *See* Or. Admin. R. 839-006-0130(5). Alternatively, Dunlap argues that because she was employed when she received the Notice of Closure and had no notice that Liberty was considering terminating her, she had no reason to believe she needed to demand reinstatement, and thus, extenuating circumstances

---

[6] It appears that Liberty had no written policy regarding demanding reinstatement; therefore, Dunlap must make any demand orally or in writing.

existed to extend the deadline for demand. Dunlap made her demand within seven days of being terminated, the first day she knew she needed to make such a demand.

The main purpose of Or. Rev. Stat § 659A.043 "is to guarantee that an employer shall not discriminate against a disabled worker for exercising the worker's rights under the Workers' Compensation Law." *Shaw v. Doyle Milling Co., Inc.*, 683 P.2d 82, 84 (Or. 1984). If an employer could find out that an employee was permanently disabled under the workers' compensation laws, wait eight days to fire that employee, and by waiting eight days take away the employee's ability to demand reinstatement, the main purpose of the law would be undermined. Dunlap demanded reinstatement within seven days of knowing that such a demand was necessary. Because Dunlap was employed when she received the Notice of Closure and had no notice that Liberty was considering termination, there is a genuine issue of material fact as to whether extenuating circumstances existed to extend the deadline for demanding reinstatement. Therefore, Liberty's motion for summary judgment on Or. Rev. Stat. § 659A.043 is denied.

### 3.  Failure to Reemploy an Injured Worker (Or. Rev. Stat. § 659A.046)

Dunlap argues that Liberty also violated her right to reemployment under Or. Rev. Stat. § 659A.046. The right to reemployment is similar to the right to reinstatement, except that it guarantees workers the right to be reemployed by the employer into a position that is "available and suitable," rather than reinstatement to a past position. Or. Rev. Stat. § 659A.046(1). The right to reemployment requires that: (1) employment is available; (2) the injured worker has made an affirmative demand for another available and suitable job; and (3) that the demand be timely. *See id.* As with the right to reinstatement, the right terminates after "seven days elapse form the date that the worker is notified . . . that the worker's attending physician . . . has released the worker for reemployment," unless the worker makes a demand for reemployment during the seven days. Or. Rev. Stat. § 659A.046.

PAGE 21 – OPINION AND ORDER

Liberty moves for summary judgment on this claim, arguing that the right to reemployment terminated because Dunlap did not demand reemployment within seven days of receiving the Notice of Closure. Dunlap made her demand for reemployment on May 4, 2012, the same day that she demanded reinstatement. For the same reasons discussed above regarding the right to reinstatement, the record creates a genuine issue of material fact as to whether an extenuating circumstance exists to excuse Dunlap's delay in response. Liberty further argues that there were no suitable positions available at the time of Dunlap's demand for reemployment. Dunlap responds that Liberty had production positions and customer service positions available and that these positions would have been suitable for Dunlap. Dunlap has presented sufficient evidence on this point to create a genuine issue of material fact as to whether Liberty had available and suitable positions. Therefore, summary judgment is denied with respect to Dunlap's claim under Or. Rev. Stat. § 659A.046.

## C. Whistleblower Claim (Or. Rev. Stat. § 659A.199)

Dunlap claims that Liberty violated Or. Rev. Stat. § 659A.199, the Oregon whistleblower statute. The Oregon whistleblower statute provides:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of state or federal law, rule, or regulation.

Or. Rev. Stat. § 659A.199(1). Dunlap claims that Liberty retaliated against her for filing BOLI and EEOC complaints by refusing to interview or rehire Dunlap after her termination on April 27, 2012. Or. Rev. Stat. § 659.199, however, applies only to employees, not former employees or other members of the general public. Dunlap cites *Robinson v. Shell Oil Company*, 519 U.S. 337 (1997), for the proposition that "employees" in the Title VII context includes former employees.

Dunlap, however, provides no legal authority interpreting the applicable Oregon statute as applying to former employees.

Or. Admin. R. 839-010-0100 sheds light on whether the term "employee" includes former employees. Or. Admin. R. 839-010-0100 implements Or. Rev. Stat. § 659A, clarifying and explaining what types of discrimination by employers is prohibited. Or. Admin. R. 839-010-0100 expressly states that certain sections of Or. Rev. Stat. § 659A apply to "current, former, and any other employer's employee." The subsection of Or. Admin. R. 839-010-0100 addressing the whistleblower section of Or. Rev. Stat. § 659A, however, does not including this expansive language, but instead just uses the word "employee" by itself. Or. Admin. R. 839-010-0100(1). Thus, this administrative rule explains that certain forms of discrimination protection apply to "current, former, and any other employer's employees," and other forms of discrimination protection (including the whistleblower protection) apply only to current employees. [7] Validly promulgated administrative rules have the force of law. *Haskins v. Emp't Dept.*, 965 P.2d 422 (Or. 1998) (en banc). "Administrative rules and regulations are to be regarded as legislative enactments having the same effect as if enacted by the legislature as part of the original statute." *Bronson v.* Moonen, 528 P.2d 82, 85-86 (Or. 1974) (en banc).

In matters of interpretation, "the office of the judge is simply to ascertain and declare what is . . . not to insert what has been omitted." Or. Rev. Stat. § 174.010. Therefore, this Court will not insert the word "former" or the words "current or former" into Or. Rev. Stat. § 659A.199 or Or. Admin. R. 839-010-0100(1). Liberty terminated Dunlap on April 27, 2012, and Dunlap filed her complaints with BOLI and the EEOC on May 10, 2012. The undisputed facts establish

---

[7] In fact, three out of the five statutes mentioned in Or. Admin. R. 839-010-0100 include the expansive "current, former, and any" language, while the remaining two (including the whistleblower statute) do not.

that Dunlap was not an employee when she initiated these complaints. Thus, Dunlap is not protected by Or. Rev. Stat. § 659A.199. Liberty's motion for summary judgment on Dunlap's whistleblower claim is granted.

## D.  Failure to Mitigate

Liberty argues that Dunlap's rejection of two unconditional offers of reinstatement terminate the accrual of any potential damages for back pay as a matter of law. Dunlap responds that Liberty's offers of employment were not reasonable and also that mitigation is a question of fact for the jury.

"Absent special circumstances," the accrual of back pay is tolled when a claimant rejects an unconditional offer of reinstatement. *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 238 (1982). "*Ford Motor* requires that a former employer establish that the plaintiff failed to accept an unconditional offer to a job substantially equivalent" to the previous job. *Boehm v. American Broadcasting Co. Inc.*, 929 F.2d 482, 485 (1991). After the employer meets this initial burden, the plaintiff must then establish "special circumstances" justifying a rejection of an unconditional offer. *Id.* The Supreme Court noted in *Ford Motor* that an example of special circumstances would be if the claimant had moved a great distance in an attempt to find a replacement job and the rejection of the unconditional offer was because of the significant cost of relocation. *Ford Motor*, 458 U.S. at 238 n.27. The Supreme Court directs that "in exceptional circumstances, the trial court, in the exercise of its sound discretion, could give weight to such factors when deciding whether backpay damages accrued after the rejection of an employer's offer should be awarded to the claimant." *Id.*

Dunlap cites the Ninth Circuit case *Ortiz v. Bank of America National Trust and Savings Association*, 852 F.2d 383 (9th Cir. 1988), for the proposition that the reasonableness of mitigation is a question of fact for the jury, not to be decided on summary judgment. In *Ortiz*,

PAGE 24 – OPINION AND ORDER

however, the Ninth Circuit was interpreting California contract law and a specific California rule

regarding the duty to mitigate damages being a question for the jury. 852 F.2d at 386-87.

Moreover, in *Boehm*, another case interpreting California state law, the court reinforced the

notion that the California duty to mitigate is different from the Title VII duty to mitigate

discussed in *Ford Motor,* noting that "although *Ford Motor* has been widely adopted in both

employment discrimination and wrongful termination contexts, the case is only relevant to this

action to the extent that it illuminates California law." *Boehm*, 929 F.2d at 485. After *Ortiz*,

several courts have held that the issue of whether a plaintiff has failed to mitigate damages

because he or she rejected an unconditional offer of reinstatement can be a question of law when

nothing in the record allows a reasonable trier of fact to find that the rejection was objectively

reasonable. *See, e.g., Sigl v. Travel Tags, Inc.*, No. 3:12-cv-01810-KI, 2013 WL 5223681 (D. Or.

Sept. 16, 2013); *Bragalone v. Kona Coast Resort Joint Venture*, 866 F. Supp. 1285, 1295 (D.

Haw. 2008); *Adams v. Home Depot USA, Inc.*, No. 05-cv-1798-ST, 2007 WL 4565163 (D. Or.

Dec. 19, 2007).

   Accordingly, Dunlap's argument that the reasonableness of mitigation is always a

question of fact for the jury is unpersuasive. Nonetheless, the Court must still decide whether

there are genuine issues of material fact as to whether the offer of reinstatement by Liberty was

"substantially equivalent" and "unconditional" and whether "special circumstances" existed to

justify Dunlap's rejection of the offers of reinstatement.

   An offer of reinstatement is unconditional when it guarantees a substantially comparable

position, the same rate of pay, the same benefits, the same level of seniority, and assurances that

the plaintiff will not be harassed upon reinstatement. *See Boehm*, 929 F.2d at 486-88; *Bragalone*,

866 F. Supp. at 1295. Liberty's offer of reinstatement to the shipping clerk position, if Dunlap

could provide a release from her doctor, was, on its face, not an unconditional offer of reinstatement. This offer was expressly conditioned on a release from the doctor. Liberty's offer of reinstatement to the Multi Flex position, on the other hand, was an unconditional offer. Although Dunlap argues that this offer was "unreasonable," she has not provided sufficient evidence to raise a genuine issue of material fact to challenge Liberty's evidence that the offer was unconditional and that the position was substantially equivalent.

Dunlap next argues that her pre-existing anxiety condition was a "special circumstance" that justified her failure to attend the job interview and her rejection of the two reinstatement offers. Rejection of a reinstatement offer is evaluated under an objective standard—whether a reasonable person would have rejected the offer of reinstatement. *Morris v. American Na. Can Corp.*, 952 F.2d 200, 203 (8th Cir. 1991). In certain situations courts have found mental conditions to be special circumstances that justify the rejection of an unconditional offer. For example, in *Lewis v. Federal Prison Industries Incorporated*, the court found that the plaintiff's rejection of an unconditional offer was reasonable when discrimination and harassment at work had caused him to develop "acute agitated depression." 953 F.2d 1277, 1278-79 (11th Cir. 1992). The plaintiff in *Lewis* had been diagnosed by a physician and was undergoing treatment with a psychiatrist. *Id.* Conversely, hurt feelings or stress about returning to the workplace are not special circumstances. *See Giandonato v. Sybron Corp.*, 804 F.2d 120, 124 (10th Cir. 1986); *Bragalone*, 866 F. Supp. at 1296; *Vowan v. Standard Brands Inc.*, 572 F. Supp. 1576, 1581 (N.D. Ala. S.D. 1983).

In this case, Dunlap testified that her anxiety condition predated her employment at Liberty and that she did not experience anxiety while working at Liberty. Instead, she testified that her anxiety returned only after reviewing the interviews of her coworkers taken by the BOLI

PAGE 26 – OPINION AND ORDER

investigator. Because Dunlap's anxiety was not caused by harassment or other negative conditions or experiences at Liberty, under the objective person standard, it was not reasonable for Dunlap to turn down Liberty's unconditional offer to be reinstated into the Multi Flex position.[8] Therefore, Liberty's motion to cut off the accrual of back pay as of November 16, 2012 is granted.

## CONCLUSION

Liberty's Motion for Summary Judgment (Dkt. 21) is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to Dunlap's whistleblower claim under Or. Rev. Stat. § 659A.199, and workers' compensation retaliation claim under Or. Rev. Stat. § 659A.040, and those claims are dismissed. The motion is also granted with respect to Dunlap's failure to mitigate damages, thereby tolling the accrual of back pay as of November 16, 2012. Liberty's motion is denied with respect to all other claims.

**IT IS SO ORDERED**.

DATED this 25th day of November, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[8] It is also notable that Dunlap applied for several positions at Liberty after being terminated. Dunlap suggests that Liberty's initial refusal to rehire Dunlap is evidence of Liberty's discrimination. It would be incongruous to allow a plaintiff to use job applications against the defendant as evidence of discrimination, while simultaneously allowing that plaintiff to turn down unconditional job offers without consequence.