# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**TRACY DUNLAP**,

        Plaintiff,

   v.

**LIBERTY NATURAL PRODUCTS, INC.**,

        Defendant.

Case No. 3:12-cv-01635-SI

**FINAL JURY INSTRUCTIONS**

DATED this 31st day of July, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

## INDEX OF INSTRUCTIONS

Instruction No. 1:   Duty of Jury ................................................................................ 3

Instruction No. 2:   Claims and Defenses ..................................................................... 3

Instruction No. 3:   Burden of Proof – Preponderance of the Evidence ............................ 6

Instruction No. 4:   What Is Evidence ........................................................................... 7

Instruction No. 5:   What Is Not Evidence ..................................................................... 7

Instruction No. 6:   Evidence for a Limited Purpose ...................................................... 8

Instruction No. 7:   Direct and Circumstantial Evidence ................................................ 8

Instruction No. 8:   Ruling on Objections ...................................................................... 9

Instruction No. 9:   Credibility of Witnesses ................................................................. 9

Instruction No. 10: Deposition in Lieu of Live Testimony ............................................ 10

Instruction No. 11: Stipulations of Fact ...................................................................... 10

Instruction No. 12: Corporations and Partnerships—Fair Treatment ............................ 11

Instruction No. 13: Liability of Corporations—Scope of Authority Not in Issue ............. 12

Instruction No. 14: Plaintiff's Disability Discrimination Claim (Claim 1) ...................... 12

Instruction No. 15: Reinstatement of Employment (Claim 2) ........................................ 21

Instruction No. 16: Reemployment in Other Available and Suitable Position (Claim 3) . 22

Instruction No. 17: Damages—Generally .................................................................... 24

Instruction No. 18: Noneconomic Damages ................................................................ 24

Instruction No. 19: Damages—Mitigation .................................................................. 25

Instruction No. 20: Duty to Deliberate ....................................................................... 25

Instruction No. 21: Communication with Court ........................................................... 26

Instruction No. 22: Return of Verdict ......................................................................... 26

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

**Instruction No. 1:   Duty of Jury**

Each of you has received a copy of these instructions, and you may take them with you to the jury room to consult during your deliberations. You must not infer from these instructions or from anything I may say or do that I have an opinion regarding the evidence or what your verdict should be. It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. In addition, you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so. In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**Instruction No. 2:   Claims and Defenses**

The plaintiff in this case is Ms. Tracy Dunlap, whom I will refer to in these instructions either as "Ms. Dunlap" or "Plaintiff." She was previously employed by the defendant, Liberty Natural Products, Inc., whom I will refer to either as "Liberty" or "Defendant." Liberty is a business that grows, imports, and wholesale distributes botanical ingredients and natural products. The company is based at the Oregon Lavender Farm in Oregon City.

PAGE 3 – FINAL JURY INSTRUCTIONS

Liberty employed Ms. Dunlap in the position of shipping clerk from September 12, 2006 until April 27, 2012, when Liberty terminated her employment, after about five and a half years.

On or about June 7, 2010, Ms. Dunlap began to experience soreness in her right elbow, which is the basis of her on-the-job injury. Four and a half months later, on October 20, 2010, she filed a workers compensation claim. A medical doctor diagnosed Ms. Dunlap with an injury or condition known as "bilateral lateral epicondylitis" in both of her elbows. After October 20, 2010, and until her employment was terminated on April 27, 2012, Liberty provided full-time, work for Ms. Dunlap within her restrictions, mostly in Liberty's shipping department. Plaintiff's workers compensation claim was accepted on December 10, 2010, and that claim was closed on March 8, 2012. On March 8, 2012, Liberty's workers compensation insurance carrier, a company called "Chartis," issued a Notice of Closure, which was received by both Ms. Dunlap and Liberty a few days later. In that Notice of Closure, Ms. Dunlap's claim was classified by Chartis as disabling under Oregon workers compensation law for the condition of bilateral lateral epicondylitis.

One and a half months later, on April 27, 2012, Liberty terminated Ms. Dunlap's employment. On May 4, 2012, Plaintiff asked to be reinstated either to her former shipping clerk position or, alternatively, reemployed in another suitable position when such a position became available. Defendant chose not to either reinstate or reemploy Plaintiff at that time.

PAGE 4 – FINAL JURY INSTRUCTIONS

Ms. Dunlap, as Plaintiff, asserts three claims against Liberty, as Defendant. Plaintiff's first claim alleges disability discrimination in violation of the federal law known as the "Americans with Disabilities Act" and a related Oregon law. I will refer to both of these laws together simply as the "ADA." In order to prove her claim under the ADA, Ms. Dunlap must prove, that is, she has the burden of proving by a preponderance of the evidence, three things. First, Plaintiff must prove that she has a "disability" as that term is defined under the ADA (or that Liberty regarded her as having a disability or that she has a record of a disability). Second, Plaintiff must prove that she is a "qualified individual" as that term is defined in the ADA, which means that she can perform the essential functions of her employment position, either with or without a reasonable accommodation by the employer. Third, and finally, Plaintiff must prove that her employer, Liberty, made its decision to terminate her employment or its later decision not to rehire her on the basis of Ms. Dunlap's disability, meaning that her disability (or Liberty's belief that she was disabled or her record of a disability) was a motivating factor in Liberty's decision or decisions. Liberty denies Ms. Dunlap's claims.

Liberty also asserts as an affirmative defense that even if there were an accommodation that would have allowed Ms. Dunlap to perform the essential functions of her job as a shipping clerk, such an accommodation would have been an "undue hardship" for Liberty, and the law does not require an employer to bear an undue hardship. For this affirmative defense, it is Defendant (Liberty) and not Plaintiff (Ms. Dunlap) who bears the burden of proving undue hardship by a preponderance of the evidence.

PAGE 5 – FINAL JURY INSTRUCTIONS

Plaintiff's second and third claims are asserted under Oregon's workers compensation law. Ms. Dunlap's second claim alleges that she had an on-the-job injury, that she made a timely demand for reinstatement to her former position as a shipping clerk (or, due to extenuating circumstances, the making of a timely demand is excused), that such a position existed and was available, that she is not disabled from performing the duties of that position, and that Liberty failed to reinstate Ms. Dunlap to her former position. Plaintiff has the burden of proving these elements by a preponderance of the evidence.

Ms. Dunlap's third claim alleges that she had an on-the-job-injury, that she was disabled from performing the duties of her former shipping clerk position, that she made a timely demand for reemployment (or, due to extenuating circumstances, the making of a timely demand is excused), that a position was available and suitable for her, and that Liberty failed to reemploy Ms. Dunlap to an available and suitable position. Plaintiff also has the burden of proving these elements by a preponderance of the evidence.

Liberty also denies Ms. Dunlap's second and third claims. For Plaintiff's second and third claims, the entire burden of proof is on Plaintiff.

Later in these instructions I will give you the specific law that you must apply to these claims. For now, however, I will describe the burden of proof and what is and is not evidence.

**Instruction No. 3:   Burden of Proof – Preponderance of the Evidence**

When a party has the burden of proof on any claim or any affirmative defense by a preponderance of the evidence, it means that you must be persuaded by the evidence that

the claim or affirmative defense is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

**Instruction No. 4:    What Is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1.        The sworn testimony of any witness;

2.        The exhibits that are received into evidence; and

3.        Any facts to which the lawyers have agreed, which are also called "stipulations."

**Instruction No. 5:    What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.        Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.        Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.        Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition

sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

4.      Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Instruction No. 6:   Evidence for a Limited Purpose**

Some evidence may be admitted only for a limited purpose. When I have instructed you that an item of evidence has been admitted only for a limited purpose, you must consider that evidence only for that limited purpose and for no other.

During the trial, I instructed you that Defendant's Exhibit 213 was received only for the limited purpose of showing what Defendant said in a letter to Plaintiff. To the extent that Defendant explains the law in that letter, you should not assume that the Defendant's statement of the law is correct, incorrect, complete, or incomplete. I am instructing you on the law that applies in this case, and what I say in these jury instructions is the only source of law that you may consider.

**Instruction No. 7:   Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**Instruction No. 8:   Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overruled the objection, the question was answered or the exhibit was received. If I sustained the objection, the question cannot be answered or the exhibit cannot be received. Whenever I have sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

**Instruction No. 9:   Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it. In considering the testimony of any witness, you may take into account:

1.      The opportunity and ability of the witness to see or hear or know the things testified to;

2.      The witness's memory;

3.      The witness's manner while testifying;

4.      The witness's interest in the outcome of the case and any bias or prejudice;

5.      Whether other evidence contradicted the witness's testimony;

6.      The reasonableness of the witness's testimony in light of all the evidence; and

7.      Any other factors that bear on believability.

The weight of the evidence as to a fact also does not necessarily depend on the number of witnesses who testify about it.

**Instruction No. 10: Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. The deposition of Tracy Dunlap was taken on April 2, 2013. You should consider her deposition testimony that was played for you on video-tape, insofar as possible, in the same way that you consider live testimony in court.

**Instruction No. 11: Stipulations of Fact**

The parties have agreed, or stipulated, to certain facts. You should, therefore, treat these facts as having been proved. These facts are as follows:

1.      Ms. Dunlap was hired for the position of Shipping Clerk by Liberty Natural Products on September 12, 2006.

2.      On October 20, 2010, Ms. Dunlap saw Dr. John R. Reichle, MD for bilateral elbow pain. Dr. Reichle provided Ms. Dunlap with a modified duty work release and restricted Ms. Dunlap's activities at work to no lifting more than 5 pounds, no pushing and/or pulling more than 5 pounds of force and instructions to avoid forceful repetitive use of both arms and hands.

3.      On October 20, 2010, Ms. Dunlap initiated a workers compensation claim for bilateral elbow pain for which she estimated the time of onset to be

June 7, 2010, and she gave a copy of her modified duty work release to

Liberty Natural Products.

4.    On October 20, 2010, Liberty Natural Products provided light duty

employment for Ms. Dunlap in its shipping department.

5.    On December 10, 2010, Ms. Dunlap's workers compensation claim was

accepted for bilateral lateral epicondylitis.

6.    On March 8, 2012, Chartis, the workers compensation insurance carrier for

Liberty Natural Products, issued a Notice of Closure, which was received

by Ms. Dunlap and Liberty Natural Products within a few days thereafter.

7.    Under the Notice of Closure, Ms. Dunlap's claim was classified as

disabling under Oregon workers compensation law and was accepted for

the condition of bilateral lateral epicondylitis.

8.    Between October 20, 2010, and April 27, 2012, Defendant provided

Ms. Dunlap with full-time light duty employment in Defendant's shipping

department.

9.    On April 27, 2012, Liberty Natural Products terminated Ms. Dunlap's

employment.

**Instruction No. 12: Corporations and Partnerships—Fair Treatment**

All parties are equal before the law and a corporation is entitled to the same fair

and conscientious consideration by you as any party.

**Instruction No. 13: Liability of Corporations—Scope of Authority Not in Issue**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority. In this case Defendant agrees that the actions of its employees, agents, directors, and officers were all taken within the scope of their authority.

**Instruction No. 14: Plaintiff's Disability Discrimination Claim (Claim 1)**

Plaintiff, Ms. Dunlap, has brought a claim under the Americans with Disabilities Act and a related state law (collectively referred to as the "ADA") against Defendant, Liberty Natural Products ("Liberty"). Under the ADA, an employer may not discriminate against an individual who has an actual disability or impairment, who is regarded as having a disability or impairment, or who has a record of having a disability or impairment, when that individual is otherwise qualified to perform the essential functions of the job, either with or without reasonable accommodation.

Ms. Dunlap alleges that Liberty made the decisions to terminate her employment and not to rehire Ms. Dunlap on the basis of her disability. Liberty denies Ms. Dunlap's claim, and asserts that Liberty terminated Ms. Dunlap's employment and did not rehire her because she could not perform the essential functions of Liberty's Shipping Clerk job.

In order to prevail on this claim, Ms. Dunlap has the burden of proving each of the following three elements by a preponderance of the evidence:

1.      Ms. Dunlap had an actual disability within the meaning of the ADA,

Ms. Dunlap was regarded by Liberty as having a disability within the meaning of the

ADA, or Ms. Dunlap had a record of a disability within the meaning of the ADA;

2.      Ms. Dunlap was a "qualified individual" the meaning of the ADA; and

3.      Ms. Dunlap's disability (or the fact that Liberty regarded Ms. Dunlap as

having a disability or the fact that Ms. Dunlap had a record of disability) was a

motivating factor in Liberty's decision either to terminate Ms. Dunlap's employment or

not to rehire her.

If you find that Ms. Dunlap has proven each of these three elements by a

preponderance of the evidence, your verdict on this claim should be for Plaintiff,

Ms. Dunlap. If, on the other hand, Ms. Dunlap has failed to prove any one or more of

these three elements, your verdict on this claim should be for Defendant, Liberty.

The Court will now explain each of these three elements in more detail.

**1.  <u>Element One</u>: Disability**

There are three alternative ways that the Plaintiff can satisfy the first element of

her disability claim: (a) she can prove that she had an actual disability within the meaning

of the ADA; (b) she can prove that Defendant regarded Plaintiff has having a disability

within the meaning of the ADA; or (c) she can prove that she had a record of a disability

within the meaning of the ADA.

**a.  Actual disability**

An actual disability within the meaning of the ADA is an impairment that

substantially limits one or more of the major life activities of an individual, as compared

to most people in the general population. In this case, Plaintiff alleges that she has a disability due to a physical impairment. The term "physical impairment" includes any physiological disorder or condition affecting the musculoskeletal system of the body.

Major life activities are the normal activities of living, which a non-disabled person can do with little or no difficulty, such as caring for oneself, performing manual tasks, lifting, walking, sleeping, seeing, hearing, speaking, breathing, learning, engaging in sexual relations, reproducing, interacting with others, and working.

A limitation is substantial if the disabled person is unable to perform the activity or is restricted in doing so. An impairment need not significantly or severely restrict the individual from performing a major life activity in order to be substantially limiting. Nonetheless, not every physical impairment constitutes a disability.

Factors to consider in deciding whether a major life activity of a plaintiff is substantially limiting, as compared to most people in the general population include:

(1)     the nature and severity of the impairment;

(2)     the duration or expected duration of the impairment; and

(3)     the permanent or long-term effect of the impairment.

When the major life activity under consideration is the ability to perform manual tasks, the impairment of that ability must, either permanently or over a lengthy period, prevent or substantially restrict a plaintiff from doing activities that are of central importance to most people's daily lives either as independent tasks or when viewed together.

PAGE 14 – FINAL JURY INSTRUCTIONS

### b.  Regarded as having a disability

In order to show that Plaintiff was "regarded as" having a disability, Plaintiff must prove that Defendant mistakenly believed that Plaintiff had an actual physical impairment, regardless of whether the impairment limited or was perceived to limit a major life activity.

A Plaintiff who is regarded as having a disability, and does not have an actual disability or a record of disability, is not entitled to an accommodation (defined below).

### c.  Having Record of Disability

In order to show that Plaintiff has a record of a disability, Plaintiff must prove there is a record of her having a physical impairment that substantially limits one or more of her major life activities, as defined above.

### 2.  <u>Element Two</u>: Qualified Individual

The second element of the ADA requires Plaintiff to prove that she is a "qualified individual" under the ADA.

The term "qualified individual" means an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. The individual must satisfy the requisite skill, experience, education, and other job-related requirements of the employment position.

Whether or not a person meets the definition of a "qualified individual" is to be determined as of the time the relevant employment decision is made by the employer.

### a.  Essential Job Functions

An "essential job function" of an employment position means the fundamental job duties of the employment position that Plaintiff holds or desires. It does not include marginal functions that may occur through the course of a job.

Factors for you to consider that may bear upon whether a particular job function is essential include, but are not limited to:

(1)     the employer's judgment as to what functions of the job are essential;

(2)     any written job description prepared before advertising the job opening or interviewing applicants for the job;

(3)     whether the reason the position exists is to perform that function;

(4)     whether there are a limited number of employees available among whom the performance of that function can be distributed;

(5)     the amount of time spent performing the function;

(6)     the consequences of not requiring the individual holding the position to perform the function;

(7)     the work experience of past employees who have held the position; and

(8)     the work experience of current employees who hold similar positions.

### b.  Reasonable Accommodation

A "reasonable accommodation" is a way or means by which an employer can enable an employee to perform the essential functions of a job at the same level of performance as the average, similarly-situated employee without a disability. An accommodation is any change in the work environment or in the way things are

customarily done that enables an individual with a disability to enjoy equal employment opportunities.

Only individuals who are actually disabled or have a record of disability are entitled to an accommodation.

### i.   Establishing or triggering the duty to accommodate

To establish, or trigger, the Defendant's (employer's) duty to provide a reasonable accommodation, the Plaintiff (employee) must prove, by a preponderance of the evidence, both of the following elements:

(1)    Request or awareness

(1a)    Plaintiff requested of Defendant an accommodation due to a disability; <u>or</u>

(1b)    Defendant became aware that Plaintiff needed an accommodation; <u>and</u>

(2)    Defendant could have made a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of the job.

A communication that lets the employer know of an employee's need for an adjustment or change at work for a reason related to a medical condition is a request for reasonable accommodation. To request reasonable accommodation, an individual may use plain English and need not mention the ADA or use the phrase "reasonable accommodation."

### ii.  Determining what is a reasonable accommodation

Under the ADA, reasonable accommodations by an employer may include:

(1)    job restructuring by reallocation or redistribution of nonessential or

marginal job functions;

(2)    acquisition of equipment or assistive devices;

(3)    reassignment to a vacant position for which Plaintiff is qualified;

(4)    modification of existing equipment; or

(5)    modification of the existing work environment.

It is for you to determine whether the accommodations identified by the Plaintiff

are reasonable. A reasonable accommodation, however, does not include changing or

eliminating any essential function of the employment, shifting any of the essential

functions of the employment to others, or creating a new position for the disabled

employee.

### iii. The interactive process

After an employer's duty to provide a reasonable accommodation has been

established, or triggered, the employer and the employee must participate in an

interactive process in which they discuss with each other whether there is a reasonable

accommodation that will permit the employee to perform the essential functions of the

job. Both the employer and the employee must cooperate and participate in this

interactive process in good faith.

The interactive process is an individualized inquiry and requires (1) an analysis of

the job and its essential functions; (2) ascertainment of job-related limitations imposed by

the disability; (3) direct communication between the employer and employee to explore

in good faith regarding possible accommodations; (4) identification of potential

accommodations and the effectiveness of each; (5) consideration of the employee's request; and (6) offering of an accommodation that is reasonable and effective. The duty to accommodate is a continuing duty that is not exhausted by one effort. The obligation to engage in the interactive process continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is necessary.

Neither party can win on this case simply by showing that the other party did not cooperate in good faith in the required interactive process. You may, however, consider whether a party cooperated in good faith in the required interactive process when you decide whether a reasonable accommodation existed.

### c.  Undue Hardship (Affirmative Defense)

On any claim of "actual disability" or "record of disability" where Plaintiff claims Defendant failed to provide a reasonable accommodation, Defendant is *not* required to provide an accommodation that will impose an undue hardship on the operation of Defendant's business. The term "undue hardship" means an action requiring significant difficulty or expense. It takes into account the financial realities of the particular Defendant and refers to any accommodation that would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business.

Defendant has the burden of proving by a preponderance of the evidence that a particular accommodation would cause undue hardship.

The factors to be considered in deciding whether an accommodation would cause undue hardship include:

(1)     the nature and net cost of the accommodation, accounting for tax credits or deductions and other outside funding;

(2)     the overall financial resources of Defendant's facility involved in the provision of the reasonable accommodation, the number of persons employed at such facility, the effect on expenses and resources, or the effect such an accommodation would have upon the operation of the facility;

(3)     the overall financial resources of Defendant's facility, the overall size of the business of Defendant's facility with respect to the number of its employees, and the number, type, and location of its facilities;

(4)     the number of persons employed by Defendant and the effect of providing such an accommodation;

(5)     the type of operations Defendant is involved in and the composition, structure, and functions of the work force; and

(6)     the overall effect the proposed accommodation would have on the operation of Defendant's facilities, including the effect on other employees and Defendant's ability to conduct business.

### 3.   <u>Element Three</u>: Causation (a decision "on the basis of")

To satisfy the third element of Plaintiff's ADA claim, Plaintiff, Ms. Dunlap, must prove that Defendant, Liberty, terminated Ms. Dunlap's employment or failed to rehire her on the basis of her disability (or on the basis of Liberty's perception of Ms. Dunlap's

disability or on the basis of a record of Ms. Dunlap's disability). Plaintiff was terminated or not rehired "on the basis" of her disability (or perception or record) if her disability was a "motivating factor" in Defendant's decision to terminate or not rehire Plaintiff. A "motivating factor" is a factor that played a part in Liberty's decision to terminate Ms. Dunlap's employment or not to rehire her, even if it was not the only factor in that decision.

**Instruction No. 15: Reinstatement of Employment (Claim 2)**

When an employee has suffered an on-the-job injury, Oregon law requires the employer to reinstate the employee to their former position under certain circumstances. Plaintiff's second claim is that Defendant failed to reinstate her into Defendant's Shipping Clerk position. To recover on a claim for failure to reinstate, the Plaintiff, Ms. Dunlap, must prove each of the following six elements by a preponderance of the evidence:

(1)     Plaintiff suffered an on-the-job injury;

(2)     Plaintiff made a timely demand for reinstatement to her former position of Shipping Clerk (or Plaintiff is excused from making a timely demand);

(3)     the Shipping Clerk position exists;

(4)     the Shipping Clerk position is available;

(5)     Plaintiff is not disabled from performing the position's duties; and

(6)     Defendant failed to reinstate the Plaintiff.

A demand for reinstatement is "timely" (element two) if made no later than seven calendar days after the employee's receipt by certified mail notice from employer's

workers compensation insurer that the employee's physician has released the employee for return to their former position. Receipt of notice is deemed to have occurred on the day the employee signs a receipt for the mailing or three days following the deposit of the certified mail with the U.S. Postal Service, whichever occurs first.

The law does not require the employee to demand reinstatement within the seven-day deadline, however, if extenuating circumstances exists to extend that deadline. In that case, the employee is excused from making a timely demand for reinstatement. It is for you to determine whether there were extenuating circumstances in this case.

If you find that Plaintiff was excused from demanding reinstatement within the seven-day deadline because of extenuating circumstances and that Plaintiff has proven by a preponderance of the evidence each of the remaining elements of this claim, then your verdict on this claim should be for Plaintiff; otherwise, your verdict should be for Defendant.

## Instruction No. 16: Reemployment in Other Available and Suitable Position (Claim 3)

When an employee has suffered an on-the-job injury that prevents the employee from returning to her former position, the law requires the employer to reemploy the employee to other available and suitable employment under certain circumstances. Plaintiff's third claim is that Defendant failed to reemploy her to other available and suitable employment.

To recover on a claim for failure to reemploy, Plaintiff, Ms. Dunlap, must prove each of the following six elements by a preponderance of the evidence:

PAGE 22 – FINAL JURY INSTRUCTIONS

(1)      Plaintiff suffered an on-the-job injury;

(2)      Plaintiff was disabled from performing the duties of her former position;

(3)      Plaintiff made a timely demand for reemployment (or Plaintiff is excused from making a timely demand);

(4)      a position was available at the time of the demand;

(5)      the position was suitable; and

(6)      Defendant failed to reemploy Plaintiff in the available and suitable position.

A position is "available" if it is vacant.

A position is "suitable" if it meets the employee's medical restrictions resulting from the employee's on-the-job injury, the employee possesses the necessary skills and abilities for the position, and the position is as similar as practicable to the employee's former position in compensation, duties, responsibilities, skills, location, duration, and shift.

A demand for reemployment is "timely" if made no later than seven calendar days after the employee's receipt by certified mail notice from employer's workers compensation insurer that the employee's physician has released the employee for reemployment. Receipt of notice is deemed to have occurred on the day the employee signs a receipt for the mailing or three days following the deposit of the certified mail with the U.S. Postal Service, whichever occurs first.

The law does not require the employee to demand reemployment within the seven-day deadline if extenuating circumstances exits to extend that deadline. In that

case, the employee is excused from making a timely demand for reemployment. It is for you to determine whether there were extenuating circumstances in this case.

If you find that Plaintiff was excused from demanding reemployment within the seven-day deadline because of extenuating circumstances and that Plaintiff has proven by a preponderance of the evidence each of the remaining elements of this claim, then your verdict on this claim should be for Plaintiff; otherwise, your verdict should be for Defendant.

**Instruction No. 17: Damages—Generally**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. If you find for Plaintiff, Ms. Dunlap, on any of claim against Defendant, Liberty Natural Products, you must determine Ms. Dunlap's damages.

Plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Plaintiff for any injury you find was caused by Defendant. You should consider only Plaintiff's noneconomic damages. It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

**Instruction No. 18: Noneconomic Damages**

If you find for Ms. Dunlap on any of her claims, you must determine her noneconomic damages, if any. Noneconomic damages are the subjective, nonmonetary losses that a Plaintiff has sustained or probably will sustain in the future. The law does

not furnish you with any fixed standard by which to measure the exact amount of

noneconomic damages. The law requires, however, that all damages awarded be

reasonable. You must apply your own considered judgment, therefore, to determine the

amount of noneconomic damages, if any.

In determining the amount of noneconomic damages, if any, you should consider

the mental, physical, and emotional pain and suffering experienced and which with

reasonable probability will be experienced in the future.

**Instruction No. 19: Damages—Mitigation**

Plaintiff has a duty to use reasonable efforts to mitigate damages. "To mitigate"

means to avoid or reduce damages. Defendant has the burden of proving by a

preponderance of the evidence:

1.      that Plaintiff failed to use reasonable efforts to mitigate damages; and

2.      the amount by which damages would have been mitigated.

**************************************************************

***Closing arguments by counsel, to be followed by the next jury instruction***

**************************************************************

**Instruction No. 20: Duty to Deliberate**

When you begin your deliberations, you should elect one member of the jury as

your presiding juror. That person will preside over the deliberations and speak for you

here in court. You will then discuss the case with your fellow jurors to reach agreement if

you can do so. Your verdict must be unanimous. Each of you must decide the case for

yourself, but you should do so only after you have considered all of the evidence,

discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you

should. Do not come to a decision simply because other jurors think it is right. It is

important that you attempt to reach a unanimous verdict but, of course, only if each of

you can do so after having made your own conscientious decision. Do not change an

honest belief about the weight and effect of the evidence simply to reach a verdict.

**Instruction No. 21: Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you

may send a note through our Courtroom Deputy, signed by your presiding juror or by one

or more members of the jury. No member of the jury should ever attempt to communicate

with me except by a signed writing; I will communicate with any member of the jury on

anything concerning the case only in writing, or here in open court. If you send out a

question, I will consult with the parties before answering it, which may take some time.

You may continue your deliberations while waiting for the answer to any question.

Remember that you are not to tell anyone—including me—how the jury stands,

numerically or otherwise, until after you have reached a unanimous verdict or have been

discharged. Do not disclose any vote count in any note to the court.

**Instruction No. 22: Return of Verdict**

A verdict form has been prepared for you. After you have reached unanimous

agreement on each applicable question on the verdict form, your presiding juror should

fill in the verdict form, sign and date the verdict form, and advise the Court that you are ready to return to the courtroom.