# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TRACY DUNLAP**,<br><br>              Plaintiff,<br><br>      v.<br><br>**LIBERTY NATURAL PRODUCTS, INC.**,<br><br>              Defendant. | Case No. 3:12-cv-01635-SI<br><br>**OPINION AND ORDER** |

Kerry M. L. Smith, SMITH & FJELSTAD, 722 N. Main Ave., Gresham, OR 97030; Banafsheh Violet Nazari, NAZARI LAW, 1526 N.E. Alberta St. No. 310, Portland, OR 97211. Of Attorneys for Plaintiff.

Janet M. Schroer and Ruth C. Rocker, HART WAGNER LLP, 1000 S.W. Broadway, 20th Floor, Portland, OR 97205. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

A jury found in favor of Tracy Dunlap ("Plaintiff") against Liberty Natural Products, Inc. ("Defendant") for disability discrimination under Title I of the Americans with Disabilities Act ("ADA") and related Oregon law. Defendant moves for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) or, in the alternative, for a new trial under Federal Rule of Civil Procedure 59. For the reasons discussed below, Defendant's motions are DENIED.

## STANDARDS

### A. Judgment as a Matter of Law

Judgment as a matter of law is proper if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quotation marks omitted); *see also Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (explaining that judgment as a matter of law must be granted if it is clear that "the evidence and its inferences cannot reasonably support a judgment in favor of the opposing party"). Because Rule 50(b) represents a renewed motion, a party cannot "raise arguments in its post-trial motion for judgment as a matter of law that it did not first raise in its Rule 50(a) pre-verdict motion." *Go Daddy Software*, 581 F.3d at 961 (quotation marks omitted).

In evaluating a motion for judgment as a matter of law, the Court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Experience Hendrix, L.L.C., v. Hendrixlicensing.com, Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). The Court may not, however, make credibility determinations, weigh the evidence, or "substitute its view of the evidence for that of the jury." *Krechman v. City of Riverside*, 723 F.3d 1104, 1110 (9th Cir. 2013) (quotation marks omitted). A jury's verdict must be upheld if it is supported by substantial evidence. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014); *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). Substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion[,] even if it is possible to draw two inconsistent conclusions from the evidence." *Weaving*, 763 F.3d at 1111 (quotation marks omitted).

**B. New Trial**

The Court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation marks omitted); *see also Shimko v. Guenther*, 505 F.3d 987, 993 (9th Cir. 2007). Unlike a Rule 50 determination, the Court is not required to view the evidence in the light most favorable to the non-moving party. *Experience Hendrix*, 762 F.3d at 842. Rather, the Court "can weigh the evidence and assess the credibility of the witnesses." *Id.* (citing *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) (per curiam)). A judge should not award a new trial unless the judge is "left with the definite and firm conviction that a mistake has been committed." *France Telecom S.A. v. Marvell Semiconductor Inc.*, 2015 WL 925892, at *1 (N.D. Cal. Mar. 2, 2015) (quoting *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987)).

## BACKGROUND

Defendant is a small business that grows, imports, and distributes wholesale botanical ingredients and natural products. Defendant employed Plaintiff in the position of shipping clerk from September 12, 2006 until April 27, 2012, when Defendant terminated Plaintiff's employment. On or about June 7, 2010, Plaintiff began to experience soreness in her right elbow, which was the basis of her on-the-job injury. On October 20, 2010, she filed a workers' compensation claim. A medical doctor diagnosed Plaintiff with an injury or condition known as "bilateral lateral epicondylitis" in both of her elbows. After October 20, 2010, and until her employment was terminated on April 27, 2012, Defendant provided full-time work for Plaintiff within her restrictions, mostly in Defendant's shipping department. Plaintiff's workers' compensation claim was accepted on December 10, 2010, and the claim was closed on March 8, 2012.

On March 8, 2012, Defendant's workers' compensation insurance carrier issued a Notice of Closure, which both Plaintiff and Defendant received a few days later. In the Notice of Closure, Plaintiff's claim was classified as disabling under Oregon workers' compensation. On April 27, 2012, Defendant terminated Plaintiff's employment. On May 4, 2012, Plaintiff asked to be reinstated either to her former shipping clerk position or another suitable position when such a position became available. Defendant chose not to reinstate Plaintiff.

Plaintiff brought suit against Defendant, alleging employment discrimination based on disability under the ADA and Or. Rev. Stat. ("ORS") § 659A.112, discrimination for using the Oregon workers' compensation system under ORS § 659A.040, failure to reinstate or reemploy under ORS §§ 659A.043 and 659A.046, and discrimination for filing claims with the Oregon Bureau of Labor and Industries and the Equal Employment Opportunity Commission under ORS § 659A.199. After the Court granted partial summary judgment, three of Plaintiff's claims—disability discrimination, "regarded as" disability discrimination, and failure to reinstate or reemploy—remained for trial. The jury returned a verdict for Plaintiff on her claim for disability discrimination under the ADA and related Oregon law. The jury returned a verdict against Plaintiff's "regarded as" disability claim and failure to reinstate or reemploy claim. The jury awarded Plaintiff non-economic damages of $70,000, and the Court awarded Plaintiff back pay damages of $13,200.

## DISCUSSION

### A.  Defendant's Renewed Motion for Judgment as a Matter of Law

Defendant moves for judgment as a matter of law, arguing that the ADA requires a plaintiff to prove, by a preponderance of the evidence, that a reasonable accommodation existed and that Plaintiff did not meet this burden. Specifically, Defendant argues that although Plaintiff identified certain accommodations, Plaintiff did not present evidence that any of the proposed

accommodations would have been reasonable or would have allowed Plaintiff to perform the essential functions of the shipping clerk position. Plaintiff asserts that the standard at trial is the same as the standard at summary judgment and that the ADA does not require that the accommodation proposed be certain to succeed or even likely to succeed but even if the ADA did require that, Plaintiff met this burden at trial as well.

### 1.  Burden at Trial

To prevail in a discrimination action under Title I of the ADA, a plaintiff must establish that the plaintiff: (1) is a person with a disability; (2) is capable of performing the essential functions of the job, with or without reasonable accommodation; and (3) was unlawfully discriminated against because of the plaintiff's disability. *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001). An employer discriminates against an employee if the employer does not provide reasonable accommodation, unless the employer can demonstrate that the accommodation would cause the employer "undue hardship." 42 U.S.C. § 12112(b)(5)(A).

Burden shifting under Title I of the ADA historically has varied slightly circuit to circuit.[1] In *U.S. Airways, Inc. v. Barnett*, however, the Supreme Court clarified that an employee can avoid summary judgment by showing that "an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." 535 U.S. 391, 401 (2002). Thus, after a plaintiff makes a facial showing that a reasonable accommodation is possible, the burden of production shifts to the employer to show that the accommodation is not reasonable or that it would cause an "undue hardship" to the employer. *Id.* at 401-02. Courts use this framework to decide whether to

---

[1] *See* Stephen F. Befort, *Reasonable Accommodation & Reassignment Under the Americans with Disabilities Act: Answers, Questions and Suggested Solutions After* U.S. Airways, Inc. v. Barnett, 45 ARIZ. L. REV. 931, 939-40 (2003); Gregory Scolieri & Matthew H. Woodward, *A Call for Clarification: Achieving a Uniform Proof Structure in Reasonable Accommodation Cases Under the Americans With Disabilities Act*, 20 HOFSTRA LAB. & EMP. L.J. 117, 123-29 (2002).

grant a motion for summary judgment in ADA employment discrimination actions. *See Barnett*, 535 U.S. at 401; *Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 (9th Cir. 2006); *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001); *Tu v. Kaiser Found. Health Plan of Nw.*, 2008 WL 3871742, at *18 (D. Or. Aug. 19, 2008). The purpose of shifting the burden of production is to represent the ADA's requirement that both the employee and the employer share the task of finding a reasonable accommodation. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1113 (9th Cir. 2000) (judgment vacated on other grounds by *U.S. Airways v. Barnett*, 535 U.S. 391, 401 (2002)).

At trial, however, the plaintiff bears the burden of persuasion to show that a "reasonable accommodation existed that would have enabled [the plaintiff] to perform the essential functions of an available job." *Tu*, 2008 WL 3871742, at *18; *see also Dark*, 451 F.3d at 1088 ([A plaintiff] has the burden of showing the existence of a reasonable accommodation that would have enabled [the plaintiff] to perform the essential functions of an available job."); *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (explaining that a plaintiff "retains the burden of proof in making [his or] her prima facie case"); *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1046 (9th Cir. 1999) ("In *Barnett*, we made clear that the plaintiff bears the ultimate burden of persuasion with regard to whether he is qualified."). Similarly, the burden of persuasion falls on the defendant to demonstrate that a proposed accommodation would cause undue hardship, if the defendant chooses to raise undue hardship as an affirmative defense. *See Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1098 (9th Cir. 2007). Therefore, Plaintiff has the burden of persuasion to demonstrate that a reasonable accommodation existed that would have enabled her to perform the essential functions of the shipping clerk position. The jury was appropriately instructed on Plaintiff's burden to do so.

## 2. The Jury's Finding

Viewing all of the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the jury's conclusion that Plaintiff could perform the essential functions of the shipping clerk position is supported by substantial evidence in the record.

First, a reasonable jury could conclude that the essential job function of the shipping clerk position was to move items from point A to point B. A reasonable jury could also conclude that lifting and carrying objects was not an essential job function of the shipping clerk position. The Court instructed the jury to consider a multitude of factors to determine whether a particular job function is essential. The relevant portion of Jury Instruction No. 14, relating to "Essential Job Functions," reads:

> An "essential job function" of an employment position means the fundamental job duties of the employment position that Plaintiff holds or desires. It does not include marginal functions that may occur through the course of a job.
>
> Factors for you to consider that may bear upon whether a particular job function is essential include, but are not limited to:
>
> > (1) the employer's judgment as to what functions of the job are essential;
> > (2) any written job description prepared before advertising the job opening or interviewing applicants for the job;
> > (3) whether the reason the position exists is to perform that function;
> > (4) whether there are a limited number of employees available among whom the performance of that function can be distributed;
> > (5) the amount of time spent performing the function;
> > (6) the consequences of not requiring the individual holding the position to perform the function;
> > (7) the work experience of past employees who have held the position; and
> > (8) the work experience of current employees who hold similar positions.

Plaintiff presented evidence that moving boxes was an essential job function for a shipping clerk and that lifting and carrying items was merely an historical method that Defendant used over the years. For example, James Dierking, president and owner of Liberty, testified that employees carried boxes to move them from point A to point B. Tr. 115-18, 136-38, 455. Hal Schachel, a former shipping manager, also testified that the purpose of moving boxes was to transport them from one spot to another. Tr. 283.

Second, a reasonable jury could conclude that Defendant was aware of Plaintiff's limitations but failed to accommodate her. Plaintiff presented evidence that after Defendant learned of Plaintiff's limitations, it did not attempt to provide devices to assist Plaintiff in the performance of her work. Plaintiff testified that she received a note from her doctor that contained work-related restrictions after she first sought medical treatment for her elbow. Tr. 523. Plaintiff later gave that note to Shane Reaney, Defendant's general manager. *Id.* Plaintiff testified that after she gave the note to Mr. Reaney, no one from Liberty interacted with her to determine the pounds of force necessary to push or pull an item in the shipping department. Tr. 523-24, 653. Instead, at a meeting, Mr. Reaney proposed that other people would need to pick up and move boxes for Plaintiff. Tr. 525. Plaintiff testified that she could not recall any modification Defendant made other than having coworkers lift and move boxes for her. Tr. 525.

Third, a reasonable jury could conclude that Plaintiff presented evidence sufficient to establish that she could perform the essential functions of the shipping clerk position—moving items from point A to point B—with accommodation. Plaintiff presented two theories in this regard: (1) carts were available for use by employees to move boxes, but Defendant encouraged Plaintiff to avoid using the carts; and (2) other assistive devices existed in the industry that Defendant could have affordably purchased for Plaintiff. Evidence at trial indicated that carts

were available at Liberty and used by other employees. Tr. 115-16, 119, 141. There was also evidence at trial that Mr. Reaney encouraged Plaintiff to avoid using the carts. Tr. 352. Plaintiff testified that she believed that she could push and pull a cart with accommodation. Tr. 653. Plaintiff noted, however, that Defendant never measured the force needed to push or pull a cart, never proposed giving Plaintiff a cart with a motor on it, and never offered any other assistive device that could have enabled Plaintiff to perform the essential functions of her position. Tr. 653.

Plaintiff also offered catalogs into evidence, which were received. These catalogs, marked as trial exhibits 22 through 33, displayed equipment available for sale in the industry to assist employees with lifting, pushing, and pulling. Tr. 435. Plaintiff presented evidence that the catalogs were available to Defendant and that Defendant did not test or employ any of the devices to assist Plaintiff with performing the essential functions of the shipping clerk position. Specifically, Mr. Dierking testified that he received similar catalogs regularly and did not bring in a salesperson to inquire whether any of these devices would assist Plaintiff in the performance of her work. Tr. 435-36.

Bethany New, an office manager and former shipping clerk for Liberty, also testified to the capabilities of the devices proposed by Plaintiff in trial exhibits 22 through 33. Ms. New testified that one of the exhibits was a mobile scissor-lift table with adjustable height that could lift up to a height of 36 inches. Tr. 227. Ms. New stated that Defendant already employed smaller versions of the scissor-lift table and that the table was big enough for Defendant's auditing and packing needs. Tr. 227-28. Ms. New then identified a table that could lift up to 1,000 pounds. Tr. 228. Ms. New agreed that the motor on the device would allow an individual to avoid pushing and pulling. *Id.* Ms. New testified that Defendant never provided any of the pictured

devices to Plaintiff, never experimented with the devices, and never consulted the catalog after Defendant received notice that Plaintiff needed work-related restrictions. Tr. 226-29.

Plaintiff's testimony also indicates that accommodations would have allowed her to perform the essential functions of the position. Plaintiff testified that she adapted certain modifications, on her own, that allowed her to perform certain job duties. For example, Plaintiff testified that in lieu of pushing and pulling items, she nudged the items with her foot or hip. Tr. 651. She also expressed that she would take multiple trips to lighten the loads she carried to her desk. Tr. 651. Further, Plaintiff avoided taping by placing bubble wrap in bags and tying bags closed. Tr. 651, 656-57.

A reasonable jury could conclude from this testimony that the assistive devices discussed at trial would have alleviated Plaintiff's performance issues. Plaintiff testified that she believed she could perform the essential functions of the position with accommodation. Plaintiff also presented evidence of possible accommodations in the form of assistive devices, of which Defendant had direct knowledge. Ms. New demonstrated that the devices shown had the capability to assist an individual in moving items from point A to point B without pushing, pulling, or lifting. Plaintiff's own modifications further indicated her ability to perform the essential functions of the shipping clerk position with accommodation. Thus, the jury's conclusion that Plaintiff had proven, by a preponderance of the evidence, that she was a "qualified individual" within the meaning of the ADA is supported by substantial evidence in the record. Accordingly, Defendant's renewed motion for judgment as a matter of law is denied.

## B. Defendant's Motion for a New Trial

Defendant also moves for a new trial, arguing that: (1) the jury instructions misstated the ADA's requirement to accommodate, prejudicing the jury's verdict; (2) the verdict form did not allow the jury to determine if the duty to accommodate was triggered; (3) the Court's admission

of Plaintiff's trial exhibits 22 though 33 was prejudicial error; (4) the clear weight of the evidence did not support the jury's finding that Plaintiff could perform the essential functions of the position with accommodation; and (5) the clear weight of the evidence supports a finding that Plaintiff, rather than Defendant, caused a breakdown in the interactive process and, therefore, Defendant cannot be liable for failure to accommodate.

## 1. Jury Instruction No. 14

Defendant argues that the Court's instructions to the jury misstated the law regarding what an employer must know to trigger the employer's duty to accommodate, absent an explicit request for accommodation by the employee. At trial, Defendant objected to Jury Instruction No. 14 on the record before the jury began deliberations. Tr. 694-95.[2] The relevant portion of Jury Instruction No. 14, relating to the duty to accommodate, reads:

> To establish, or trigger, the Defendant's (employer's) duty to provide a reasonable accommodation, the Plaintiff (employee) must prove, by a preponderance of the evidence, both of the following elements:
>
> (1) Request or awareness
>
>   (1a) Plaintiff requested of Defendant an accommodation due to a disability; or
>
>   (1b) Defendant became aware that Plaintiff needed an accommodation; and

---

[2] Plaintiff argues that Defendant failed to preserve its objection to Jury Instruction No. 14. Defendant, however, submitted Defendant's proposed jury instructions. Defendant also submitted objections to Plaintiff's proposed instructions, which were supported by relevant authority, to the Court. Further, Defendant sent a letter to the Court, making the Court aware of the nature of the alleged error. Thus, Defendant preserved the objection for appeal. *See Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1230 (9th Cir. 2011) (explaining that an objection to a jury instruction does not need to be "formal" and that a party may properly object by submitting a proposed instruction that is supported by relevant authority, as long as the submission is specific enough to bring the court's attention to the precise nature of the alleged error).

(2) Defendant could have made a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of the job.

A communication that lets the employer know of an employee's need for an adjustment or change at work for a reason related to a medical condition is a request for reasonable accommodation. To request reasonable accommodation, an individual may use plain English and need not mention the ADA or use the phrase "reasonable accommodation."

Defendant's argument is twofold. First, Defendant argues that the Court should have used verbatim the Ninth Circuit's Model Jury Instruction 12.8, instead of subsection (1b) of the Court's instruction. The relevant portion of Model Jury Instruction 12.8 provides:

The defendant knew, or had reason to know that:

(1) The plaintiff has a disability;

(2) The plaintiff was experiencing workplace problems because of the disability; and

(3) The disability prevented the plaintiff from requesting a reasonable accommodation

Defendant argues that this instruction was important to Defendant's case theory and that if this instruction were given to the jury, the jury would have returned a verdict for Defendant because there was no evidence at trial that Plaintiff's disability prevented her from requesting an accommodation.

Second, Defendant argues that because the Court did not use Model Jury Instruction 12.8, the pertinent portion of Jury Instruction No. 14, at a minimum, should have stated:

(1) Request or awareness

(1a) Plaintiff requested of Defendant an accommodation due to a disability; or

(1b) Defendant became aware that Plaintiff needed *and desired* Accommodation;

Specifically, Defendant argues that subsection (1b) misinformed the jury that "in the absence of a request for accommodation, Plaintiff could satisfy her burden to prove that a duty to accommodate was triggered merely by showing that the Defendant was aware of her disability." Defendant asserts that in a situation where the employer knows of the disability, the law also requires an employee to convey the desire for accommodation. Defendant argues that the term "desired" is particularly important in this case because, Defendant claims, Plaintiff did not communicate a desire to continue working as a shipping clerk for Defendant despite her disability. Defendant concludes, therefore, that Defendant's duty to accommodate Plaintiff was not triggered under the ADA.

The interactive process is triggered "either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation." *Barnett*, 228 F.3d at 1112. An employee does not need to mention the ADA or use any particular language when requesting an accommodation; the employee can simply inform the employer of a need for adjustment due to a medical condition. *Id.*; *see also Hoang v. Wells Fargo Bank, N.A.*, 724 F. Supp. 2d 1094, 1101 (D. Or. 2010).

Similarly, Oregon law provides:

> Once a qualified employee or applicant with a disability has requested reasonable accommodation or otherwise disclosed to the employer a disability that may require reasonable accommodation, the employer has a duty to initiate a meaningful interactive process with the employee or applicant to determine whether reasonable accommodation would allow the employee or applicant to perform the essential functions of a position held or sought.

Or. Admin. R. 839-006-0206(4). "As does federal law, Oregon law places the burden of initially informing the employer of the need of an accommodation on the employee." *Benz v. West Linn Paper Co.*, 803 F. Supp. 2d 1231, 1257 (D. Or. 2011). In situations where an employee is unable

to inform the employer of the need of an accommodation, however, "if the [employer] knows of the existence of the employee's disability, the employer must assist in initiating the interactive process." *Barnett*, 228 F.3d at 1114.

The jury instructions given were not misleading and correctly represented the law and its intended purpose. First, although a court may use model jury instructions as a guide, model instructions are not authoritative statements of law. The language in Model Jury Instruction 12.8 originates from *Barnett*, a case dealing with employment discrimination under Title I of the ADA. *See Barnett*, 228 F.3d at 1112. The Ninth Circuit in *Barnett*, however, specifically held that the duty to engage in the interactive process is triggered when an employee either requests an accommodation or makes the employer aware of the need and desire for accommodation.[3] The Court's jury instruction sufficiently captures the holding of *Barnett*. Model Jury Instruction 12.8 may be appropriate in some cases.[4] This was not such a case.

Second, adding the text "and desired" into the jury instruction would have merely amplified the principle of law that the instructions already conveyed. The ADA, at its core, requires an employer to engage in the interactive process when there is either a request from the employee or awareness by the employer that the employee needs an accommodation. The desire for accommodation is implicit when the employee expresses the need for an accommodation. No

---

[3] "Therefore, we join explicitly with the vast majority of our sister circuits in holding that the interactive process is a mandatory rather than a permissive obligation . . . and that this obligation is triggered by an employee or an employee's representative giving notice of the employee's disability and the desire for accommodation. In circumstances in which an employee is unable to make such a request, if the company knows of the existence of the employee's disability, the employer must assist in initiating the interactive process." *Barnett*, 228 F.3d at 1114.

[4] For example, Model Jury Instruction 12.8 may be useful in a case where there is no evidence that the employee may have put the employer "on notice" of the employee's disability and need for accommodation.

PAGE 14 – OPINION AND ORDER

additional magical words of desire are necessary. In this case, the jury could have reasonably concluded that Plaintiff implicitly communicated her desire to remain with the company when she provided a medical note from her doctor that described her work-related restrictions and needs.

Case law further supports the Court's instruction. For example, Defendant cites *Benz* to support the proposition that Oregon law requires an employee to convey the desire for accommodation. The facts of *Benz*, however, are distinguishable from the case at hand. In *Benz*, the court emphasized that the employee never put the employer "on notice" of a *need* for accommodation. The doctor's notes that the employee provided to the employer did not indicate any work-related restrictions or need for accommodation upon returning to work. *Benz*, 803 F. Supp. 2d at 1258. Therefore, the court held that there was no indication that the employer received information that the employee's condition imposed a need for accommodation upon the employee's return to work. *Id.* Contrary to Defendant's position, the court's analysis in *Benz* focused on the employee's requirement to convey the employee's "need for accommodation" to the employer, not necessarily to convey an explicit desire to continue working for the employer despite the employee's disability. *See id.* at 1257-58.

Here, Plaintiff provided Mr. Reaney with a note from her doctor, describing work-related restrictions related to her elbow injury. Tr. 523. In response to this letter, Defendant modified Plaintiff's work tasks. On March 8, 2012, Defendant's workers' compensation insurance carrier issued a Notice of Closure, which both Plaintiff and Defendant received a few days later. Tr. 424. In that Notice of Closure, the insurance carrier classified Plaintiff's claim as disabling under Oregon workers' compensation law. After receiving the Notice of Closure, the evidence shows that Defendant did not speak with Plaintiff about any other possible accommodation for

her permanent partial disability. Tr. 424, 458-59. Thus, a reasonable jury could find that Defendant was "on notice" of Plaintiff's need for accommodation due to her disability, triggering Defendant's duty to engage in the interactive process. In this instance, the law is clear that the interactive process is an ongoing duty and that the employer's duty is not exhausted by one effort. *Humphrey*, 239 F.3d at 1138. Therefore, a reasonable jury could conclude that: (1) Defendant's duty to accommodate Plaintiff was triggered when she provided medical documentation that specified Plaintiff would need work-related restrictions; (2) Defendant did not exhaust that duty by temporarily modifying Plaintiff's work; and (3) Plaintiff was not required explicitly to express her desire for some other accommodation upon receiving the Notice of Closure. The Court's instruction correctly stated the applicable principles of law and adequately guided the jury in its deliberations.

### 2.  Verdict Form

Defendant argues that it was prejudicial error not to include the following special interrogatory:

> Did Plaintiff prove by a preponderance of the evidence that she requested an accommodation that would enable her to perform the essential functions of the Shipping Clerk Job?

Instead, the Court's actual interrogatory read:

> Did Plaintiff prove, by a preponderance of the evidence, that she was able to perform the shipping clerk position with a reasonable accommodation?

Defendant argues that the Court's interrogatory "allowed the jury to presume that Liberty owed Plaintiff an ADA duty to accommodate" because, Defendant alleges, it did not allow the jury to determine if the ADA's duty to accommodate was triggered.

Defendant's proposed special interrogatory likely would have confused the jury. The only notable difference between Defendant's proposed interrogatory and the Court's actual

interrogatory is the phrase "requested an accommodation." As discussed above, however, the ADA envisions situations where an employer's duty to engage in the interactive process is triggered without an explicit request for accommodation by the employee. Defendant's proposed interrogatory inappropriately expresses that a plaintiff is always required to request an accommodation. Further, Defendant's proposed interrogatory expresses that Plaintiff was required to request a specific accommodation that would have enabled Plaintiff to perform the essential functions of the shipping clerk position. The law does not require an employee to propose a specific reasonable accommodation before engaging in the interactive process.[5] Instead, the ADA requires the employer and employee to engage in the interactive process to determine what a reasonable accommodation may look like. Therefore, the Court's actual interrogatory correctly stated the applicable principles of law and adequately guided the jury in its deliberations.

### 3. Trial Exhibits 22 Through 33.

Defendant argues that the Court improperly admitted trial exhibits 22 through 33. Plaintiff responds that Defendant did not adequately preserve this argument for appeal and that the Court properly admitted the exhibits. "Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b). Specifically, if an objection has been "thoroughly explored" during a hearing on the motion in limine and the court has made a clear and definitive ruling on the matter, no further action is required to preserve the objection for appeal. *Palmerin*

---

[5] "[S]ince the regulations require the interactive process to identify appropriate accommodations, 'it would make little sense to insist that the employee must have arrived at the end product of the interactive process before the employer has a duty to participate in that process.'" *Barnett*, 228 F.3d at 1113 (quoting *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 316 (3d Cir. 1999)).

*v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986). A court's ruling is definitive when the judge gives "no hint that the ruling might be subject to reconsideration." *Id.* When a party sufficiently informs the court of the grounds for the objection and the court subsequently denies the motion in a definitive ruling, the objection has been preserved for appellate review. *Dream Games of Ariz., Inc., v. PC Onsite*, 561 F.3d 983, 988 n.3 (9th Cir. 2009) (holding that a short but clear argument contained in the motion in limine properly preserved the objection for appeal); *see also Sheehy v. S. Pac. Transp. Co.*, 631 F.2d 649, 652-53 (9th Cir. 1980) (holding that an objection during pretrial arguments was sufficient to preserve appeal).

Here, the Court definitively ruled on Defendant's objections to trial exhibits 22 through 33, and pre-admitted the exhibits over Defendant's objections. Dkt. 109 at 20. Thus, Defendant properly preserved the objection for appeal. Defendant argues that trial exhibits 22 through 33 lacked proper authentication and foundation, had no relevance, and constituted hearsay. The Court discusses Defendant's arguments in turn and finds that the admission of trial exhibits 22 through 33 does not constitute prejudicial error.

### a.  Authentication and Foundation

Defendant argues that Plaintiff did not (1) provide sufficient evidence to authenticate trial exhibits 22 through 33 or (2) lay necessary foundation to demonstrate that the devices depicted in the exhibits would be "effective" to accommodate Plaintiff. To satisfy the requirement of authentication, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Here, the evidence at issue is exhibits 22 through 33, which were purported to be images and descriptions of assistive equipment taken from various manufacturing companies' sales catalogs. Defendant argues not that the exhibits required authentication and foundation as catalogs of devices used in the shipping industry, but that the exhibits were not self-authenticating and required foundation for

the proposition that the exhibits represented examples of "effective" assistive devices for

Plaintiff.

A document may be authenticated through testimony of a witness with knowledge that

the item is what the proponent claims it to be. Fed. R. Evid. 901(b)(1). In this case, Mr. Dierking

testified that he was familiar with the images of the equipment devices contained in the exhibits.

Tr. 481-82. Specifically, Mr. Dierking indicated that he consistently reviewed these types of

documents in connection with the operation of his business, Tr. 481-82, and that he had "gotten

catalogs like this over the years regularly." Tr. 435. Mr. Dierking further testified that a sales

representative provided the catalogs to Mr. Dierking for him to look through to determine what

might be appropriate for his company. Tr. 481.

A party may also authenticate a document properly through distinctive characteristics of

the item. "The appearance, contents, substance, internal patterns, or other distinctive

characteristics of the item, taken together with all the circumstances" can demonstrate that the

item is what the proponent claims it to be. Fed. R. Evid. 901(b)(4). Here, the catalog images

exhibited distinctive characteristics that demonstrated that the exhibits were, in fact, images and

descriptions taken from various sales catalogs for material-handling devices. The trial exhibits

included cover pages of the catalogs, manufacturer names, manufacturers' contact information,

images of machines, model numbers, and respective names and prices of the equipment. These

characteristics, combined with Mr. Dierking's testimony regarding his familiarity with similar

catalogs and the equipment advertised within them, were sufficient to authenticate trial

exhibits 22 through 33.

The testimony of Mr. Dierking at trial was also sufficient foundation for authenticity.

"[F]oundation must be laid 'by evidence sufficient to support a finding that the matter in

question is what the proponent claims.'" *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (quoting Fed. R. Evid. 901(a)). The testimony of Mr. Dierking, combined with the distinctive characteristics of trial exhibits 22 through 33, established sufficient foundation for the admissibility of the exhibits. Contrary to Defendant's position, Plaintiff was not required to lay foundation that the depicted assistive devices were or would be "effective" in accommodating Plaintiff's specific limitations. This distinct issue goes to Plaintiff's ultimate burden of persuasion, as discussed above. Thus, the Court will not address the effectiveness of the devices depicted in the context of an evidentiary threshold for admissibility purposes.

### b.  Relevance

Defendant further argues that the images of assistive equipment, without more, are speculative and not relevant in ascertaining whether the devices pictured would have provided an effective accommodation for Plaintiff. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Accordingly, the threshold for relevance is exceedingly low. *See id.*; *Rambus, Inc. v. Samsung Elecs. Co.*, 2008 WL 2944892, at *1 (N.D. Cal. July 16, 2008).

Here, the evidence contained pictures of equipment designed to assist with lifting, pushing, and pulling. As Defendant correctly notes, Plaintiff had the burden of persuading the jury that accommodations existed that would have allowed Plaintiff to perform the essential functions of her job. Plaintiff used these exhibits during the cross examination of Mr. Dierking to demonstrate that assistive devices were available in the market during the relevant time period and that Mr. Dierking knew that assistive devices were readily available for purchase. Further, Plaintiff indicated during redirect examination that she believed she could meet the lifting and pulling requirements "with accommodation." Tr. 653. Ms. New testified that the particular

devices pictured would have allowed an individual to avoid pushing and pulling. Tr. 228.

Therefore, the collective testimony of Mr. Dierking, Plaintiff, and Ms. New would allow a

reasonable juror to infer that the devices depicted in trial exhibits 22 through 33 would have

allowed Plaintiff to meet the requirements of the shipping clerk position and that Defendant

could have made these accommodations available to Plaintiff.

### c.   Hearsay

Defendant argues that trial exhibits 22 through 33 constitute hearsay. Defendant argues

that these trial exhibits constitute hearsay because: (1) the trial exhibits are effectively

"statements" because they convey the message that the depicted devices are "effective"

accommodations, and (2) the Plaintiff offered the exhibits to prove that the devices pictured

would have assisted Plaintiff in performing the essential functions of her job. Hearsay is an out-

of-court statement used to prove the truth of the matter asserted in the statement. Fed. R.

Evid. 801(c). A "statement" is "a person's oral assertion, written assertion, or nonverbal conduct,

if the person intended it as an assertion." Fed. R. Evid. 801(a). Although trial exhibits 22

through 33 contain statements, the statements do not assert that the depicted devices would be

effective accommodations for employees with disabilities.

The trial exhibits do, however, contain statements regarding the size, weight, and features

of various items. Even though the statements within the exhibits do not fall squarely within a

hearsay exception, Federal Rule of Evidence 807 is appropriate in this case. Under Rule 807, a

court may admit hearsay if: "(1) the statement has equivalent circumstantial guarantees of

trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the

point for which it is offered than any other evidence that the proponent can obtain through

reasonable efforts; and (4) admitting it will best serve the purposes of [the rules of evidence] and

the interests of justice." Fed. R. Evid. 807(a). The trial exhibits at issue had circumstantial

guarantees of trustworthiness because the catalogs were generally published in the industry, as Mr. Dierking testified, and were not created for the purposes of litigation. As discussed, the trial exhibits were material to demonstrate that accommodations existed in the market and were available at the published prices. Plaintiff provided the catalog images to Defendant before trial and Defendant had a fair opportunity to "meet" the out-of-court statement and raise any further objections. *See* Fed. R. Evid. 807(b). The Court did not err in receiving this evidence.

### d. Lay Opinion

Defendant argues that trial exhibits 22 through 33 conveyed the message that the devices depicted were "reasonable accommodations." Thus, Defendant contends that the images themselves were improper lay opinion as to whether the devices pictured would have allowed Plaintiff to perform the essential functions of the Shipping Clerk position.

If a witness is not testifying as an expert, "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact at issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. In this case, the exhibits were not "testimony" and thus do not fit within the rule limiting improper lay opinion testimony. Furthermore, the exhibits were not used to convey an "opinion" as to the effectiveness of the devices. Instead, Plaintiff provided the exhibits to demonstrate the existence and availability of assistive devices. Actual witnesses testified both to the availability of these devices and to the "reasonableness" of the pictured devices. For example, Plaintiff opined that she believed she could meet the push and pull requirements with accommodation, and Ms. New testified as to the capabilities of the devices pictured. To the extent that Defendant believed that Plaintiff or Ms. New opined on a matter that should have been reserved for an expert, Defendant had the opportunity to object at trial but did not.

### 4.   Essential Functions of the Shipping Clerk Position

The weight of the evidence supports the jury's finding that Plaintiff could perform the essential functions of her job with accommodation. As discussed above, Plaintiff introduced evidence that accommodations existed and were available to Defendant; the accommodations were affordable and available for use by Defendant; the accommodations would have allowed Plaintiff to overcome her physical limitations to perform the essential functions of her job; and that Plaintiff believed she could perform the essential functions of her position with accommodations.

Additionally, Defendant did not produce substantial evidence that the assistive devices proposed by Plaintiff would not have enabled Plaintiff to perform the essential functions of the shipping clerk position. Although Mr. Dierking testified that he has never found a device in a catalog that would eliminate all of the lifting functions that are required to fulfill an order for Defendant, Tr. 482, he also stated that he did not evaluate, test, or employ a device or a combination of devices that could possibly allow Plaintiff to perform the essential functions of the shipping clerk position. Tr. 435-36, 653. Therefore, for the reasons discussed above regarding Defendant's renewed motion for judgment as a matter of law, the weight of the evidence supports the jury's finding that Plaintiff could perform the essential functions of the shipping clerk position with accommodation.

### 5.   The Interactive Process

Defendant argues that the weight of the evidence demonstrates that Plaintiff was responsible for the breakdown in the interactive process and that Defendant should have prevailed at trial on this basis alone. The law is clear that, "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate

reasonable accommodations." *Humphrey*, 239 F.3d at 1137 (citing *Barnett*, 228 F.3d at 1114).

"The interactive process requires communication and good-faith exploration of possible

accommodations between employers and individual employees, and neither side can delay or

obstruct the process." *Humphrey*, 239 F.3d at 1137. Employers that fail to engage in the

interactive process in good faith may be liable under the ADA if a reasonable accommodation

would have been possible otherwise. *Id.* at 1137-38. The employer's duty to engage in the

interactive process is ongoing and is not exhausted by one effort. *E.E.O.C. v. UPS Supply Chain

Solutions*, 620 F.3d 1103, 1111 (9th Cir. 2010). Particularly, when "the employer is aware that

the initial accommodation is failing and further accommodation is needed," an employee's

failure to propose an alternative accommodation does not necessarily foreclose a claim that the

employer failed to engage in the interactive process. *Humphrey*, 239 F.3d at 1138.

For purposes of summary judgment, the Ninth Circuit has noted that "'courts should

attempt to isolate the cause of the breakdown [in the interactive process] and then assign

responsibility' so that '[l]iability for failure to provide reasonable accommodations ensues only

where the employer bears responsibility for the breakdown." *Barnett*, 228 F.3d at 1115 (quoting

*Beck v. Univ. Of Wis. Bd. of Regents*, 75 F.3d 1130, 1135-37 (7th Cir. 1996)) (alterations in

original). The Ninth Circuit, however, has held that an employer "cannot prevail at the summary

judgment stage if there is a genuine dispute as to whether the employer engaged in the interactive

process in good faith." *Barnett*, 228 F.3d at 1116.

Accordingly, at the summary judgment stage of this case, the Court held that there was a

genuine dispute as to whether Defendant engaged in good faith in the interactive process. For

purposes of trial, the Court instructed the jury that neither party could win the case simply by

showing that the other party did not cooperate in good faith in the interactive process. Tr. 716.

Instead, the Court instructed the jury that it could take into account whether either party did not participate in good faith in the interactive process when determining whether a reasonable accommodation was actually possible. *Id.* Defendant did not object to this jury instruction. Under this instruction, even if the evidence supported an inference that Plaintiff contributed to a breakdown in the interactive process, it was simply a factor for the jury to consider when assessing whether a reasonable accommodation would have been available. Therefore, the issue was not dispositive of whether reasonable accommodation was possible.

Nonetheless, there is substantial evidence in the record that Plaintiff did not cause a breakdown in the interactive process. At trial, evidence was presented to show that, before Plaintiff's termination, no one told her that Defendant was unsatisfied with her modified employment or that it was only temporary. Specifically, Mr. Dierking testified that he never spoke with Plaintiff about performance issues and that he made the decision to discharge Plaintiff without even speaking to her. Tr. 431. After Plaintiff received the Notice of Closure, no one from Defendant contacted her or discussed modifying her duties or workstation. Tr. 539. Additionally, Plaintiff continued to work after Defendant received the Notice of Closure. Tr. 539. Until she was actually fired, Defendant never indicated to Plaintiff that her employment would be terminated or was even in jeopardy. *Id.* The weight of the evidence supports the jury's finding that Defendant did not fulfill its duty to find a reasonable accommodation for Plaintiff using the interactive process. Because the Court does not have a definite and firm conviction that a mistake has been committed, Defendant's motion for a new trial is denied.

///

///

PAGE 25 – OPINION AND ORDER

## CONCLUSION

Defendant's renewed motion for judgment as a matter of law and motion for new trial

(Dkt. 139) are DENIED.

**IT IS SO ORDERED**.

DATED this 20th day of April, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
