# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**TRACY DUNLAP**,

Plaintiff,

v.

**LIBERTY NATURAL PRODUCTS, INC.,**

Defendant.

Case No. 3:12-cv-01635-SI

**OPINION AND ORDER ON ATTORNEY'S FEES**

Banafsheh Violet Nazari, NAZARI LAW, 1526 N.E. Alberta St. No. 310, Portland, OR 97211. Of Attorneys for Plaintiff.

Janet M. Schroer and Ruth C. Rocker, HART WAGNER LLP, 1000 S.W. Broadway, 20th Floor, Portland, OR 97205. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

The jury returned a verdict in favor of Tracy Dunlap ("Plaintiff" or "Dunlap") against

Liberty Natural Products, Inc. ("Defendant" or "Liberty") for disability discrimination under

Title I of the Americans with Disabilities Act ("ADA") and related Oregon disability

discrimination law. The jury awarded Plaintiff $70,000 in noneconomic damages, and the Court

ruled in favor of Plaintiff on her claim for economic damages in the amount of $13,200, resulting

in a total recovery of $83,200 exclusive of costs and attorney's fees. Plaintiff timely moved for

an award of attorney's fees in the amount of $235,038,[1] pursuant to 42 U.S.C. § 1988, 42 U.S.C.

§ 12205, and Or. Rev. Stat. ("ORS") §§ 659A.885(3) and 20.107.[2]  Defendant timely objected to

a significant portion of Plaintiff's requested attorney's fees. For the reasons stated below,

Plaintiff's Motion for Award of Attorney's Fees (Dkt. 164) is GRANTED IN PART.

## STANDARDS

Under the ADA, "the court . . . in its discretion, may allow the prevailing party . . . a

reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. Under

federal fee-shifting statutes, the preferred method of calculating reasonable attorney's fees is the

"lodestar" method. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010). This is

because "the lodestar method produces an award that *roughly* approximates the fee that the

prevailing attorney would have received if he or she had been representing a paying client who

was billed by the hour in a comparable case," is "readily administrable," and is "objective." *Id.*

(emphasis in original). Additionally, one purpose of the federal fee-shifting statutes is to ensure

that a prevailing plaintiff's counsel receives a fee that is "sufficient to induce a capable attorney

to undertake the representation of a meritorious . . . case." *Id.* at 552. The lodestar method of

calculating attorney's fees "yields a fee that is presumptively sufficient to achieve this

---

[1] Plaintiff originally requested $241,736.50 in attorney's fees. Dkt. 164, at 1. In Defendant's opposition, Defendant asserts that there had been a double-counting of Plaintiff's attorney time in the amount of $14,346.50. Dkt. 181, at 14. In her Reply, Plaintiff concedes that 40.41 hours of Mr. Smith's time was inadvertently counted twice. Dkt. 188, at 9. This requires a reduction of $14,143.50 (40.41 hours times $350/hour). In her Reply, Plaintiff also seeks $7,445 as additional compensation, reflecting 29.78 hours that Plaintiff's attorney Ms. Nazari spent working on Plaintiff's Reply (29.78 hours times $250/hour). Dkt. 188, at 6 and 12. Thus, Plaintiff seeks a total attorney fee award in the amount of $235,038. Dkt. 188, at 2.

[2] Plaintiff also timely filed a Bill of Costs, seeking $6,429.06. Dkt. 162. Defendant did not oppose Plaintiff's cost bill. *See* Dkt. 181. The Court has reviewed Plaintiff's Bill of Costs and has approved the amount requested. Dkt. 190.

objective." *Id.* Although the lodestar calculation results in a presumptively reasonable fee, this fee may be adjusted in certain circumstances. *Id.*

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).[3] In making this calculation, the district court should take into consideration various reasonableness factors, including the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 553-54; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

In determining the number of hours reasonably spent, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez*, 729 F.3d at 1202.

The district court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable. The court may conduct an hour-by-hour analysis of the fee request. *Id.* at 1203. Alternatively, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Id.* (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quotation marks omitted)). "[W]hen a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must 'set

---

[3] It is "well established that time spent in preparing fee applications" is also compensable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996) (quotation marks omitted)).

forth a concise but clear explanation of its reasons for choosing a given percentage reduction.'"

*Id.* (quoting *Gates*, 987 F.2d at 1400). The Ninth Circuit recognizes one exception to this rule:

"'[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—

based on its exercise of discretion and without a more specific explanation.'" *Id.* (alteration in

original) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, other courts, including the District of Oregon, specifically caution against

both block-billing and providing vague or otherwise inadequate descriptions of tasks because

these practices hinder a court's ability to assess the reasonableness of the time expended. *See,*

*e.g.*, U.S. District Court, District of Oregon, Message from the Court Regarding Attorney Fee

Petitions, *available at* https://www.ord.uscourts.gov/index.php/court-info/court-policies/fee-

petitions (last updated Feb. 6, 2013) (last visited February 9, 2016). Applying this cautionary

statement, United States Magistrate Judge John Acosta has noted, "the court may excuse this

method when the billing period is no more than three hours." *Noel v. Hall*, 2013 WL 5376542,

at *6 (D. Or. Sept. 24, 2013). For block-billing periods in excess of three hours, however, Judge

Acosta has reduced each applicable entry by fifty percent.

> Accordingly, the block-billed time requested over the three-hour
> maximum will be reduced by fifty percent. Such a reduction is
> warranted because the vague nature of the entry makes it
> impossible for the court to make *any* assessment as to the
> reasonableness of that time expended. *See Lyon v. Chase Bank*
> *USA, N.A.*, 656 F.3d 877, 892 (9th Cir. 2011) ("The fee award may
> be reduced if [plaintiff's] renewed request is supported only by
> block-billing statements of the relevant activity, although a fee
> award cannot be denied on this basis.").

*Id.* (alteration and emphasis in original).

After determining the number of hours reasonably spent, the district court then calculates

the reasonable hourly rates for the attorneys and paralegals whose work comprise the reasonable

number of hours used in calculating the lodestar amount. For this purpose, the "'prevailing

PAGE 4 – OPINION AND ORDER

market rates in the relevant community' set the reasonable hourly rates." *Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). "'Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.'" *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved. *Gonzalez*, 729 F.3d at 1205-6.

In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In addition, in the District of Oregon we have the benefit of several billing rate surveys. One survey is the Oregon State Bar 2012 Economic Survey ("OSB 2012 Survey"), which contains data on attorney billing rates based on type of practice, geographic area of practice, and years of practice. A copy of the OSB 2012 Survey is available at http://www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf (last visited on February 9, 2016). Another survey, although somewhat more limited in scope, is the Morones 2014 Survey of Commercial Litigation Fees ("Morones 2014 Survey"). The Morones 2014 Survey contains data on attorney billing rates based on years of experience, but it is confined to commercial litigation attorneys practicing in Portland, Oregon. The Morones 2014 Survey reports data for 297 attorneys from 19 law firms (out of 29 law firms requested to provide data). A copy of the Morones 2014 Survey is available at, among other places, http://mbabar.org/assets/documents/cle//012115%20Attorney%20Fee%20Petitions%20Mats.pdf (last visited February 9, 2016).

PAGE 5 – OPINION AND ORDER

There is a strong presumption that the fee arrived at through the lodestar calculation is a reasonable fee. *Perdue*, 559 U.S. at 552. A district court may, however, adjust the lodestar amount in "rare" and "exceptional" cases, such as when a particular factor bearing on the reasonableness of the attorney's fees is not adequately taken into account in the lodestar calculation.[4] *See Perdue*, 559 U.S. at 552-54 (finding that, in certain circumstances, the superior performance of counsel may not be adequately accounted for in the lodestar calculation); *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (finding that although in ordinary cases the "results obtained" factor is deemed adequately accounted for in the lodestar calculation, it may serve as a basis to adjust the lodestar when "an attorney's *reasonable* expenditure of time on a case [is not] commensurate with the fees to which he [or she] is entitled").

## BACKGROUND

Plaintiff alleged claims under the ADA ("actual disability," "regarded as disabled," and "record of disability"), ORS 659A.103 *et seq.* (Oregon disability discrimination law for actual disability, regarded as disabled and record of disability), ORS 659A.040 (Oregon workers' compensation discrimination), ORS 659A.043 (Oregon failure to reinstate an injured worker), ORS 659A.046 (Oregon failure to re-employ an injured worker), and ORS 659A.199 (Oregon

---

[4] Factors that may be relevant to the reasonableness of a fee include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation, and the ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Based on subsequent case law, a twelfth factor identified in *Kerr*, the fixed or contingent nature of the fee, is no longer a valid factor to consider in determining reasonable attorney's fees. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 n.7 (9th Cir. 2011).

whistleblowing). The Court granted partial summary judgment in favor of Defendant and dismissed Plaintiff's claims under ORS 659A.040 (Oregon workers' compensation discrimination) and ORS 659A.199 (Oregon whistleblowing). A jury trial was held on Plaintiff's remaining claims. The jury found in favor of Plaintiff for disability discrimination under Title I of the ADA and Oregon's disability discrimination law based on her theories of "actual disability" and "record of disability." The jury found against Plaintiff on her theory of "regarded as" disabled under both the ADA and Oregon disability discrimination law. The jury also found against Plaintiff on her claims under Oregon's workers' compensation law for failure to reinstate and failure to reemploy. At trial, Plaintiff asked the jury for an award of noneconomic damages between $100,000 and $150,000,[5] and the jury awarded Plaintiff $70,000.

## DISCUSSION

### A.  Review of Hourly Rates

Plaintiff seeks an award of attorney's fees in the amount of $235,038, based on the time and effort expended by two timekeeper, attorney Mr. Kerry Smith (recently deceased) and attorney Ms. Banafsheh Violet Nazari. The requested hourly rate for Mr. Smith is $350, which was his customary hourly rate charged to fee-based clients. In 2014, Mr. Smith was an attorney with 27 years of experience and expertise in employment litigation. The requested hourly rate for Mr. Smith is below both the median and the average hourly rates for commercial litigation attorneys with 20 to 29 years of experience, as set forth in the Morones 2014 Survey (which is $428 and $433, respectively). In addition, the requested hourly rate for Mr. Smith is lower than

---

[5] *See* Dkt. 145, at p. 117 (transcript of closing argument, at p. 752). In her Complaint, Plaintiff asked for economic and noneconomic damages in an amount to be determined at trial. Dkt. 1.

the 75th percentile for Portland attorneys with 21 to 30 years of experience, under the OSB 2012 Survey (which is $399). The hourly rate requested for Mr. Smith, therefore, is reasonable.

The requested hourly rate for Ms. Nazari is $250, which was her customary hourly rate charged to fee-based clients. In 2014, Ms. Nazari was an attorney with six years of experience. The requested hourly rate for Ms. Nazari is below both the median and the average hourly rates for commercial litigation attorneys with zero to nine years of experience, as set forth in the Morones 2014 Survey (which is $283 for each category). In addition, the requested hourly rate for Ms. Nazari is equal to the 75th percentile for Portland attorneys with four to six years of experience, under the OSB 2012 Survey. The hourly rate requested for Ms. Nazari, therefore, is reasonable.

## B.  Review of Hours Expended

### 1.  Partial Success

A prevailing plaintiff seeking attorney's fees may be compensated only for hours expended in furtherance of successful claims or claims closely related to successful claims. *Hensley*, 461 U.S. at 434-35. Further, "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Id.* at 440. As explained by the Ninth Circuit

> A plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful § 1983 claim. Such unrelated claims must be treated as if they had been raised in a separate lawsuit to realize "congressional intent to limit awards to prevailing parties." [*Hensley v. Eckerhart*, 461 U.S. 424 (1983)] at 435. However, in a lawsuit where the plaintiff presents different claims for relief that "involve a common core of facts" or are based on "related legal theories," the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis. *Id.* Instead, the court must proceed to the second part of the analysis and "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

*McCown*, 565 F.3d at 1103.

Thus, to determine fees in a case of partial success, the court must consider: (1) whether the plaintiff failed to prevail on claims that were unrelated to the claims on which she succeeded; and (2) whether the plaintiff achieved "'a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) (quoting *Hensley*, 461 U.S. at 434); *see also Arnold v. Pfizer, Inc.*, 2015 WL 4603326, at *4 (D. Or. July 29, 2015) (Acosta, J.). As Judge Acosta explained in his well-reasoned and well-supported decision:

> The first step requires the court to examine whether the successful and unsuccessful claims are unrelated. Claims are unrelated if the successful and unsuccessful claims are distinctly different both legally and factually; claims are related, however, if they involve a common core of facts or are based on related legal theories. The court should focus on whether the unsuccessful and successful claims arose out of the same course of conduct. If the claims are related, the court engages in the second step of the analysis, and must assess the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. When a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. Nonetheless, a plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee.

*Arnold*, 2015 WL 4603326, at *4 (citations and quotation marks omitted).

Plaintiff correctly observes that if there are common issues among claims on which the wronged employee prevails and on which she did not prevail it is not necessary to apportion fees among the claims on which the employee succeeded and those on which she lost. Plaintiff prevailed on two of her three theories of her federal and state disability discrimination claim ("actual disability" and "record of disability.") Although Plaintiff did not prevail on her

"regarded as disabled" theory under the ADA and state disability discrimination claim, that theory is sufficiently related to the theories upon which she prevailed and arose out of a common core of facts.

Plaintiff, however, also did not prevail on her workers' compensation discrimination claim, her workers' compensation failure to reinstate claim, her workers' compensation failure to reemploy claim, or her whistleblowing claim. These claims also are not sufficiently related to Plaintiff's disability discrimination claim and do not arise out of a common core of facts.

The theories on which Plaintiff prevailed focus on whether the Plaintiff was a "qualified individual" under the ADA. The key question at trial was whether Plaintiff, with reasonable accommodation, could perform the essential functions of the employment position that she held. The jury concluded that the Plaintiff was a qualified individual in this sense. Plaintiff's workers' compensation failure to reinstate and failure to reemploy claims focused at trial on such issues as whether Plaintiff had extenuating circumstances for failing to demand reinstatement or reemployment within the seven-day required period, whether Plaintiff could have returned to her former position without accommodation, and whether a suitable "alternative position" was available for Plaintiff. The evidence and legal issues presented in connection with these latter claims were distinct and severable from Plaintiff's disability discrimination claim. Further, the two claims that were dismissed on summary judgment, Plaintiff's workers' compensation discrimination claim and  whistleblowing claim, also were based on issues unrelated to whether Plaintiff was a qualified individual who could perform the essential functions of her employment position with accommodation. Accordingly, the claims on which Plaintiff did not prevail did not involve "a common core of facts" and were not based on "related legal theories" to the claims on which Plaintiff did prevail.

PAGE 10 – OPINION AND ORDER

Although Plaintiff prevailed on her claim of disability discrimination, she did not prevail on her unrelated claims of workers' compensation discrimination, workers' compensation failure to reinstate, workers' compensation failure to reemploy, or whistleblowing. In an equitable sense, it is not unfair to conclude that Plaintiff prevailed on between one-third and one-half of her claims (depending on how they are grouped). This is also generally consistent with the fact that Plaintiff asked the jury to award between $100,000 and $150,000 in emotional distress damages, and the jury awarded $70,000. The Court then added $13,200 in economic damages, for a total award of $83,200. This reflects approximately one-half of what Plaintiff was seeking. One-half of Plaintiff's requested attorney's fees of $235,038 is $117,519. A 50 percent reduction based on limited success is reasonable in this case, especially where Plaintiff essentially succeeded on only one of her five claims. *See generally Harris v. Marhoefer*, 24 F.3d 16, 18-19 (9th Cir. 1994) (reducing the plaintiff's lodestar figure by 50 percent, after deducting duplicative time, based on limited success); *Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 899–900, 906 (9th Cir.1995) (affirming 75 percent cut to the number of hours billed where plaintiff succeeded on only 25 percent of his claims).

### 2.    Specific Objections to Ms. Nazari's and Mr. Smith's Expended Hours

In addition to Defendant's objections based on Plaintiff's limited success, the hourly rates of Plaintiff's two attorneys, and Plaintiff's admittedly and inadvertent double-counted hours, which have already been discussed by the Court, Defendant objects that Mr. Smith did not maintain contemporaneous time records for work performed in June and July 2014,[6] resulting in Ms. Nazari having to "reconstruct" Mr. Smith's time for that period, which amounted to 253.4 hours of "reconstructed" time. According to Defendant, this amounts to more than $88,000 in

---

[6] The three-day trial in this case was held on July 29-31, 2014.

undocumented fees. In response, Plaintiff states that due to the passing of Mr. Smith, Plaintiff is unable to explain why he failed to maintain contemporaneous time records for the two months leading up to trial, thereby requiring reconstruction. It is not disputed that Mr. Smith worked on this case to some extent during June and July of 2014, which included his attendance at a pretrial conference and at the three-day jury trial that concluded on July 31, 2014.

It is appropriate to reduce Mr. Smith's requested hours by some amount of time to reflect the lack of contemporaneous documentation and the fact that the reconstruction was not, by necessity, performed by Mr. Smith himself. The Court thus reduces Mr. Smith's "reconstructed" time of 253.4 hours by ten percent. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.2008) ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."). At an hourly rate of $350, this reduction amounts to $8,869.

Defendant also objects to the 335 hours initially sought by co-counsel, Ms. Nazari, which is valued at more than $83,000. Defendant objects to this quantity of time on the grounds that Ms. Nazari only began working on this case in mid-March 2014, four months before trial and after discovery and summary judgment briefing was completed. According to Defendant, Ms. Nazari did not handle any depositions, did not argue any motions, did not engage with the Court during any pre-trial conferences, handled no witness examinations, and made no presentations to the jury at trial. Defendant argues that Ms. Nazari's time expended is excessive in light of her relatively limited role. The Court notes that Ms. Nazari's expended time includes approximately 30 hours working on jury instructions, 26 hours working on visual aids and exhibits, and 65 hours preparing the initial attorney's fees petition and cost bill. In response,

PAGE 12 – OPINION AND ORDER

Plaintiff states that the hours expended by Ms. Nazari are not excessive and that Plaintiff's

submitted fee request already reflects a voluntary 10 percent "haircut" on Ms Nazari's time.

It is appropriate to reduce Ms. Nazari's requested hours by some amount of time for the

reasons advanced by Defendant. For example, sixty-five hours to prepare the initial fee petition

and cost bill seems excessive. Similarly, 26 hours to prepare visual aids and exhibits also seems

too much for this case. The Court thus reduces Ms. Nazari's time of 335 hours by ten percent.

*See Moreno*, 534 F.3d at 1112. At an hourly rate of $250, this reduction amounts to $8,375.

**C.  Summary**

Plaintiff seeks an award of attorney's fees in the amount of $235,038. The Court reduces

this amount by 50 percent ($117,519) to reflect partial success as explained above. The Court

further reduces the amount requested by $8,869 based on Mr. Smith's "reconstructed" time as

explained above. Finally, the Court also reduces the amount requested by $8,375 based on

Ms. Nazari's expended time as explained above. Accordingly, Plaintiff is entitled to an award of

attorney's fees in the amount of $100,275.

## CONCLUSION

Plaintiff's Motion for Award of Attorney's Fees (Dkt. 164) is GRANTED IN PART.

Plaintiff is awarded attorney's fees in the amount of $100,275.

**IT IS SO ORDERED**.

DATED this 12th day of February, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge